(84 South. 721)

PATERSON & EDEY LUMBER CO. v. BANK OF MOBILE.    (1 Div. 86.)

(Supreme Court of Alabama.  Dec. 18, 1919.)

1. BANKS AND BANKING ⬯260(1)—NATIONAL BANK MAY CONTRACT FOR SAWING OF LUMBER TAKEN ON CLAIM.

It is not ultra vires for a national bank, which has taken lumber on its debt, to contract in disposing of it to have it sawed to dimensions required by purchaser; this not being engaging in the lumber business, but an action necessarily incident to the collection of its debt.

2. SALES ⬯404—WHERE GOODS PAID FOR ARE USED, REMEDY OF BUYER FOR DEFECTS IS SUIT FOR BREACH, NOT COMMON COUNTS.

In action by buyer of lumber, which had paid for the lumber and claimed the lumber did not conform to the contract, where plaintiff's testimony, while it tended to show a rejection of the lot of lumber because of "rot," also showed without contradiction that the rejected lumber was used by the consignee for "crating purposes," plaintiff could not recover on the common counts; its right of action, if any, being for breach of contract for not supplying lumber in accordance therewith.

3. PRINCIPAL AND AGENT ⬯21, 22(1)—AGENCY MAY BE ESTABLISHED BY TESTIMONY, ALTHOUGH NOT BY DECLARATIONS, OF AGENT.

While the fact of agency, resting in parol, may not be proved by declarations of alleged agent alone, its existence may be established by his testimony.

Appeal from Circuit Court, Mobile County; Norvelle R. Leigh, Judge.

Action by the Paterson & Edey Lumber Company against the Bank of Mobile for breach of contract relative to the sale of lumber. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The judgment entry recites that—

"Issue having joined between the plaintiff and defendant, thereupon came a jury of good and lawful men, * * * who, having heard the

evidence and charge of the court, and thereupon, before the jury retired, the plaintiff makes known to the court that because of and from the adverse rulings and decisions of the court on the pleadings and the evidence, and the court's charge to the jury, it has become necessary for the plaintiff to suffer a nonsuit, with bill of exceptions, and that it desires to take the same in such manner as to preserve its rights to have each of said rulings reviewed by the Supreme Court on an appeal: It is therefore considered, ordered, and adjudged by the court that, because of the aforesaid adverse rulings and decisions of the court on the pleadings and the evidence, and on the court's charge to the jury, the plaintiff suffer a nonsuit, with bill of exceptions in this court," etc.

The following is the contract made the basis of the suit:

"August 16, 1915, Mobile, Alabama.

"Hallett Mfg. Co., Mobile, Alabama: Confirming purchasing order No. 8161-P (show this number on your invoice): Please cut the following long leaf yellow pine clear oak, and ship as directed below, noting carefully all instructions, terms, and conditions. Positively no allowance made for overshipment. Ship exact amounts shown below. Order to be shipped complete one car of each as shown below. Consign to Frost & Wood Company, Ltd., Smith's Falls, Ontario, Canada, via Big Four and C. P. Railway. 40,000 feet 1x3 and up x 4' 4'' or 8', 9', or 10', $37.50. 40,000 feet 1½x6x8' (this may be 1½x2¾ or 3¼''), $42.50. F. o. b. cars Smith's Falls, Ontario, Canada. Please give us nice, clean, clear, even-cut stock, dry, or nearly so; one car of each size in September, November, and January.

"Terms: If inspected at mill by our authorized inspector, 100 per cent., less 2 per cent. discount upon receipt of invoice, inspector report, and signed original bill of lading conforming to our shipping instructions. If not inspected at mill by our inspector, 80 per cent., less 2 per cent. discount upon receipt of invoice and signed original bill of lading conforming to our shipping instructions.

"The Paterson & Edey Lumber Company, Inc., has the right to accept any portion of any shipment that may be up to above specifications, and may reject any portion that may not be up to said specifications, and shall hold the rejected portion for thirty days at seller's risk, subject to the disposition of the seller, which time it may be sold by Paterson & Edey Lumber Company, Inc., to cover costs. All freight paid on shipments to be deducted from proceeds of accepted stock.

"Paterson & Edey Lumber Company, Inc."

The case was tried on the common count and on the counts mentioned in the complaint, all of which sought to recover as for the breach of the contract above set out; the breach being stated in varying terms. The pleas were the general issue, non est factum, ultra vires by reason of the fact, pleas setting up the fact that plaintiff had instructed the defendant in writing not to make further shipment of said lumber, and pleas alleging that before the lumber was cut up in accordance with the terms of the contract it was exhibited to plaintiff's agent, who inspected and accepted the same. The plaintiff sought to show that, while the contract was between it and the Hallett Manufacturing Company, the Hallett Manufacturing Company was acting for and on behalf of the Bank of Mobile, who owned the lumber, and whose vice president, A. L. Staples, had directed the Hallett Manufacturing Company to sell it to the bank. The evidence tended to establish that the lumber was bulk stock, stored in piles, and formerly owned by the Blue Rock Manufacturing Company, who delivered it to the Bank of Mobile as a payment on certain notes due from it to the bank. The letter was introduced from A. L. Staples, vice president, to the Hallett Manufacturing Company, saying that Hallett was to receive $6 per thousand feet for all the lumber that passed through his mill; the letter further stating that all the lumber that could not be cut into the Paterson & Edey specification should be cut in standard sizes. It further appeared that the bank received the proceeds of said lumber in the form of four checks, signed by the Paterson & Edey Lumber Company.

The main questions litigated were that the contract was ultra vires and that, even if the contract was within the power of the bank, Mr. Staples, the vice president, was not shown to have any authority to make it. At the conclusion of the evidence the court, at the request of the defendant, directed a verdict for the defendant.

Armbrecht, Johnston & McMillan, of Mobile, for appellant. The contract was not beyond the powers of a national bank, and the court improperly sustained the demurrers based on that theory. U. S. Compiled Statutes, § 9661; 7 Corpus Juris, 812, 813; Ib. 589, 591 592; Mitchie on Banks, 1190, 1191; (D. C.) 30 Fed. 744; 92 U. S. 122, 23 L. Ed. 679; 7 Kan. App. 787, 54 Pac. 20; 94 Fed. 584, 36 C. C. A. 402; 87 Wash. 506; 151 Pac. 1129; 74 Ga. 454; 11 Barb. 213; 17 Wis. 372; 197 N. Y. 168, 90 N. E. 430, 27 L. R. A. (N. S.) 234, 134 Am. St. Rep. 863, 18 Ann. Cas. 795; 134 Wis. 565, 115 N. W. 128, 27 L. R. A. (N. S.) 243; 218 U. S. 27, 30 Sup. Ct. 672, 54 L. Ed. 915; 142 Fed. 31, 73 C. C. A. 211. If the contract was not ultra vires, then Staples had authority to make the contract; if the power to make this contract was beyond his authority, then the bank has ratified it. 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49; 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611; 101 Ala. 1, 13 South. 283; 121 Ala. 215, 26 South. 6; 168 Ala. 469, 53 South. 228; 128 Ala. 192, 29 South. 688; 101 Ala. 79, 14 South. 98; 83 Fed. 556, 27 C. C. A. 601; 117 Ala. 270, 23 South. 29; 18 Ala. 270; 68 Ala. 167; 144 Ala. 545, 39 South.

359; 37 Ala. 222; 38 Ala. 208; 39 Ala. 33; 41 Ala. 510; 96 Ala. 258, 11 South. 280; 148 Ala. 434, 43 South. 797; 160 Ala. 306, 49 South. 73; 166 Ala. 657, 51 South. 943, 21 Ann. Cas. 1149; 170 Ala. 443, 54 South. 58.

Inge & Kilborn, of Mobile, for appellee. The contract was ultra vires. 5 Fed. Stat. Anno. § 5136; 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198; (C. C.) 124 Fed. 239; 117 Tenn. 153, 96 S. W. 1051, 6 L. R. A. (N. S.) 887, 119 Am. St. Rep. 994; 86 Fed. 505, 30 C. C. A. 223; 50 Ill. 321; 202 U. S. 295, 26 Sup. Ct. 613, 50 L. Ed. 1036; 202 Ala. 335, 80 South. 417; 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007.

The evidence failed to show that Staples had the authority to execute the contract or to authorize the Hallett Manufacturing Company to execute it.

THOMAS, J. The recent announcements of this court with respect to the taking of a nonsuit with a bill of exceptions are contained in Schillinger v. Wickersham, 75 South. 11, 12;[1] Herrmann v. Mobile Co., 80 South. 112, 113;[2] State ex rel. Kernachan v. Roberts, 83 South. 49;[3] Engle v. Patterson, 167 Ala. 117, 120, 121, 52 South. 397; Code, § 3017. It is the law of this jurisdiction that a party to an ultra vires executory contract made with a corporation is not estopped to defend against an action thereon, for the want of corporate capacity to make such contract, "either by the fact of contracting, whereby the power to contract is, in a sense, admitted or recognized, or by the fact that the fruits or issues of the contract have been received or enjoyed, and this though the assault upon the transaction comes from the corporation itself." Sherwood v. Alvis, 83 Ala. 115, 3 South. 307, 3 Am. St. Rep. 695; Chewacla Lime Works v. Dismukes, 87 Ala. 344, 6 South. 122, 5 L. R. A. 100; Wiley Fert. Co. v. Carroll, 80 South. 417.[4] As early as Smith v. Ala. Life Ins. & Trust Co., 4 Ala. 558, 568, it was announced that an ultra vires contract "cannot be the foundation of any proceeding in a court of justice"; in Chambers v. Falkner, 65 Ala. 448, 456, that no right of action can spring out of ultra vires acts of corporations, and that no action can be maintained thereon "whatever form the pleader's skill may give it." Grand Lodge v. Waddill, 36 Ala. 313, 319; Long v. Ga. Pac. Ry. Co., 91 Ala. 519, 8 South. 706, 24 Am. St. Rep. 931. A note of Alabama cases is contained in L. R. A. 1917B, pp. 834, 849, and recent English cases on the subject are In re Birbeck Permanent Benefit Building Soc., [1912] 2 Ch. (Eng.) 183, 208; s. c., [1915] 1 Ch. (Eng.) 91; Sinclair v. Broughan, [1915] A. C. (Eng.) 398.

An exception to this general rule was recognized in Allen v. Lafayette, 89 Ala. 641, 652, 8 South. 30, 34 (9 L. R. A. 497), by the holding that liability was imposed by law upon the municipal corporation that had "legitimately used it [the money loaned] for the benefit of the town, in a way and to an end fully authorized by its charter"; and in Mayor, etc., v. Hollingsworth, 170 Ala. 396, 402, 54 South. 95, 97 (Ann. Cas. 1912D, 652), that, "although no action may be had upon the express contract, still where money or property has been received under the contract, and beneficially applied to authorized objects or purposes under the law, an action of implied assumpsit may be had." In Bluthenthal v. Town of Headland, 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904, is contained the declaration that the money or property received by the municipality must have been devoted to the necessaries of the corporation. The use of the phrase "expressly authorized by the charter, or is necessarily incident to the powers for carrying out the objects of the charter," was, in A. G. S. Ry. Co. v. Loveman Comp. Co., 196 Ala. 683, 689, 72 South. 311, 313, declared not intended to indicate that action "necessarily incident to the powers" should be "indispensably necessary to the purposes of the corporation, but only that they should be necessary in the sense of being appropriate and suitable for the purposes for which the corporation was organized." Jackson Lbr. Co. v. Trammell, 74 South. 469.[5] The subject of the contracts was insurance in Sales-Davis Co. v. Henderson-Boyd Co., 193 Ala. 166, 69 South. 527, and U. S. C. I. P. & Fdy. Co. v. Bailey, 194 Ala. 261, 69 South. 825, and held to be within the charter power of said corporations (being engaged, respectively, in lumbering and industrial manufacturing), or necessarily incident thereto. In A. C., G. & A. Ry. Co. v. Kyle, 81 South. 54, 56,[6] the latest declaration of this court on this subject, the observation was made that—

"The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against it. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation was created, is not to be taken as prohibited."

Such was the rule declared by the federal courts. Thomas v. West Jersey Railroad Co., 101 U. S. 71, 81, 25 L. Ed. 950; Green Bay & M. R. Co. v. Union, etc., Co., 107 U. S. 98, 100, 2 Sup. Ct. 221, 27 L. Ed. 413; 10 Rose's Notes, U. S. Rep. 452; 9 Rose's Notes, 905 et seq.

The federal courts have also announced this rule:

---

[1] 199 Ala. 612.
[2] 202 Ala. 274.
[3] Ante, p. 325.
[4] 202 Ala. 335.
[5] 199 Ala. 536.
[6] 202 Ala. 552.

"A contract of a corporation which is ultra vires, * * * outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not be authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. * * * 'When the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped by assenting to it, or by acting upon it, to show that it was prohibited by those laws.' * * * 'The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law.' " Concord First Nat. Bank v. Hawkins, 174 U. S. 364, 370, 371, 19 Sup. Ct. 739, 742 (43 L. Ed. 1007).

At the time the contract was made defendant was a national bank, deriving its powers from Congress and limited thereby. In 5 Fed. Stat. Ann. § 5136 (1905 Ed.) p. 82 (U. S. Comp. St. § 9661), as a declaration of powers conferred on national banks are:

Subdivision 3, "To make contracts;" and subdivision 7, "To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title."

The powers of a national bank conferred in said statute constitute the measure of its authority, and it cannot rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which it is established. California Nat. Bank v. Kennedy, 167 U. S. 362, 366, 17 Sup. Ct. 831, 42 L. Ed. 198; First Nat. Bank v. Converse, 200 U. S. 425, 438, 26 Sup. Ct. 306, 50 L. Ed. 537. That is, so far as the statute attempts to regulate such corporations, it is supreme. Logan County Nat. Bank v. Townsend, 139 U. S. 67, 69, 73, 11 Sup. Ct. 496, 35 L. Ed. 107. Of the policy for the limitation of power of such corporation, it is observed that—

"It is not intended that they shall be created only to be launched as independent corporate entities, and thereafter be permitted to engage in general competitive commercial enterprises, subject only to certain general rules and limitations; but, owing to their relations to the moneyed and other interests which are reserved in and controlled by the government, they are kept under the strict regulation and watchful care of the government, and constitute a class of corporations entirely distinct from all others." Boyd v. Schneider (C. C.) 124 Fed. 239, 242.

Speaking of the general authority given a national bank to transact its business as specified by the statute, the Chief Justice said that all incidental powers are granted that are necessary to carry it on, and that—

"These powers are such as are required to meet all the legitimate demands of the authorized business, and to enable a bank to conduct its affairs, within the general scope of its charter, safely and prudently. This necessarily implies the right of a bank to incur liabilities in the regular course of its business, as well as to become the creditor of others. Its own obligations must be met, and debts due to it collected or secured. The power to adopt reasonable and appropriate measures for these purposes is an incident to the power to incur the liability or become the creditor. Obligations may be assumed that result unfortunately. Loans or discounts may be made that cannot be met at maturity. Compromises to avoid or reduce losses are oftentimes the necessary results of this condition of things. These compromises come within the general scope of the powers committed to the board of directors and the officers and agents of the bank, and are submitted to their judgment and discretion, except to the extent that they are restrained by the charter or by-laws. Banks may do, in this behalf, whatever natural persons could do under like circumstances." First Nat. Bank v. Nat. Exchange Bank, 92 U. S. 122, 127 (23 L. Ed. 679).

In Rankin, Receiver of Berlin Nat. Bank, v. Emigh, 218 U. S. 27, 35, 30 Sup. Ct. 672, 676 (54 L. Ed. 915), Emigh v. Earling, 27 L. R. A. (N. S.) 243, is this declaration:

"As the obligation to do justice rests upon all persons, natural and artificial, if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation."

This principle afforded relief to producers who had stored with, or sold to, the creamery company their milk under agreement that all milk supplied should be converted into butter, this to be sold, and the proceeds divided among the milk owners, less the compensation agreed upon, and it was held that the producers were entitled to recover pro rata so much of their property as was actually in the hands of the receiver; that is, such producers were awarded a right to recover as general creditors of the bank to the

extent only that their property had been received and appropriated by the bank, operating under assignment to it, in the attempt to collect the moneys due the bank by the creamery company.

[1] The primary question for consideration in the instant case is: Had the defendant National Bank of Mobile the power to make the contract in question, and did it become liable thereunder for the purchase price of the lumber that did not measure up to contract specifications? Otherwise stated: Was the instant contract one for the sale of the lumber by defendant bank to plaintiff in the collection of its debt for which the lumber had been taken, or, after so acquiring the lumber, was the contract for its manufacture such as to subject the corporation to the doing of a milling business beyond the powers conferred upon it by the statutes? It is averred that defendant agreed to "saw and manufacture, or cause to be sawed and manufactured," lumber of the kind and dimensions indicated in plaintiff's pleading; further, that defendant has failed and refused to manufacture, ship, and deliver said lumber of the grade, kind, and character, and of the thickness, widths, and lengths specified in said agreement declared upon.

A fair consideration of the whole testimony will show that, in order to fulfill the contract with Paterson-Edey Lumber Company, Incorporated, the lumber theretofore taken by the bank from Blue Rock Manufacturing Company was required "to be recut." This is illustrated by one of plaintiff's witnesses, who testified that he was formerly connected with Blue Rock Manufacturing Company, which owned and conveyed to defendant the lumber from which plaintiff's contract was to be filled as agreed upon; that the same, as delivered by his company to the bank in payment of its debt, was of such dimensions that it was necessary to be recut before it could be used to fulfill the contract specifications with plaintiff. To use the language of the witness, it was necessary "to take that lumber and rip it up and cut it up in sizes called for by that order; * * * would have to remanufacture it, * * * to change the length"; pass it "through a woodworking plant of some kind, ripsaw"; to fill the contract specifications. Witness further testified said lumber had been in the terminal warehouse about two months before it was turned over by the Blue Rock Manufacturing Company to the Bank of Mobile in payment of the amount due the bank; was then in merchantable condition, "freshly manufactured, clean, and right."

The general affirmative charge was no doubt given, at defendant's request, on the assumption that said contract of sale required the lumber to be recut to specification requirements, and that this was its remanufacture, in such sense, as to be beyond the corporate powers, express or implied, of a national bank, and, if so, that the bank was not subject to liability thereunder or for damages for failure to fulfill the terms of the contract of sale of the lumber as specified. We entertain the contrary view. The primary powers of defendant corporation for the carrying on of a banking business consisted of discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, receiving deposits, buying and selling exchange, coin, and bullion, loaning money on personal security, and obtaining, issuing and circulating notes, according to the provisions of the acts of Congress. Implied power in the collection of its debts authorized that corporation, where necessary and in good faith, to acquire real and personal property in such collection. Having due regard for the rights of its stockholders, depositors, and the general public, its said implied duty and power were, not only to preserve the property taken in the collection of its debts, but reasonably to fit it for, and place it upon, the market in its conversion into money in payment of the debt for which said property was acquired. Defendant was attempting to do no more than this in making the sale to Paterson-Edey Lumber Company, by contracting for and making the lumber conform to purchasers' specifications. This was not the engaging in a milling business by the Bank of Mobile beyond its charter powers; it was an action necessarily incident to the collection of its debt, on which the lumber in its original form was taken. This may be done, under the federal authorities. Roebling Sons' Co. v. First Nat. Bank of Richmond (D. C.) 30 Fed. 744, 746; Butler v. Cockrill, 73 Fed. 945, 20 C. C. A. 122; Cooper v. Hill, 94 Fed. 582, 584, 36 C. C. A. 402; Cockrill v. Abeles, 86 Fed. 505, 511, 512, 30 C. C. A. 223; First Nat. Bank v. Nat. Exch. Bank, 92 U. S. 122, 23 L. Ed. 679; Merchants' Nat. Bank of Cinci. v. Wehrmann, 202 U. S. 295, 299, 26 Sup. Ct. 613, 50 L. Ed. 1036; First Nat. Bank v. Conway, 87 Wash. 506, 151 Pac. 1129; Morris v. Third Nat. Bank of Springfield, 142 Fed. 25, 31, 32, 73 C. C. A. 211.

[2] The plaintiff was not entitled to recover upon the common counts. The general affirmative charge, given at defendant's instance without reference to specific counts of the complaint, was without error, as it had application to such counts. While the testimony of plaintiff tended to show a rejection of the lot of lumber because of "rot," yet that testimony also showed without contradiction that the rejected lumber was used by the consignee for "crating purposes." Lowy v. Rosengrant, 196 Ala. 337, 342, 71 South. 439; Mutual Loan Soc. v. Stowe, 15

Ala. App. 293, 73 South. 202. If a right of action existed in plaintiff's behalf, it was for a breach of the contract in not supplying the lumber in accordance with the contract.

On reason and authority, said contract of defendant with plaintiff (if such there was) to saw and manufacture, or cause to be sawed and manufactured, said lumber acquired by defendant national bank from the Blue Rock Manufacturing Company, and to put the same in a necessary and reasonable condition for its sale and conversion into money, was not beyond the corporate power of that national bank in the collection of its debt, on which the lumber was acquired.

[3] A material inquiry was presented: Who was the real vendor of the lumber, defendant, or the Hallett Manufacturing Company, or both? The ruling of the trial court on admission and exclusion of evidence tending to prove this fact prevented introduction of competent and relevant evidence on the trial. If the lumber was sold to the Hallett Manufacturing Company by the national bank, and by the former resold to Paterson-Edey Lumber Company, or was sold to the Hallett Manufacturing Company and Paterson-Edey Lumber Company jointly, the plaintiff cannot recover under this pleading. On the other hand, if the Hallett Manufacturing Company was only acting for the national bank in making a sale of its said lumber to Paterson-Edey Lumber Company, liability may have attached, since a sale by the bank in the collection of its debt was not beyond its charter powers. The court was apprised of the several material tendencies of evidence by which was expected to be shown the authority of the bank's said officials to make the contract for sale of the lumber theretofore acquired in the collection of said debt, and also that the sale was to Paterson-Edey Lumber Company by the bank through the Hallett Manufacturing Company, and was not to the Hallett Manufacturing Company, and by the latter to Paterson-Edey Lumber Company, or to both of said companies. Evidence tending to show such agency or such facts was competent. If the fact of agency rests in parol, it may not be proved by declarations of an alleged agent alone; however, the existence of the agency may be established by the testimony of such agent. Roberts & Son v. Williams, 198 Ala. 290, 73 South. 502; J. C. Lysle Mill. Co. v. North Ala. Groc. Co., 201 Ala. 222, 77 South. 748, 751; Robinson v. Greene, 148 Ala. 434, 43 South. 797.

As we have observed, the cause was tried on the theory that liability did not attach to the bank on such contract, the breach of which is declared on in counts 3, 4, 9, 10, 11, 15, 16 and 17; this, no doubt, caused the rejection of evidence making necessary the giving of the general affirmative charge at defendant's request.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and BROWN, JJ., concur.