253 So.2d 17

**SECURITY TRUST AND SAVINGS BANK, etc., et al.**

**v.**

**MARION COUNTY BANKING COMPANY, etc., et al.**

**6 Div. 842.**

Supreme Court of Alabama.

Sept. 30, 1971.

508

Thomas, Taliaferro, Forman, Burr & Murray and John D. Clements, Nelson Vinson, Hamilton, Birmingham, for appellants.

Fite, Davis & Fite, Hamilton, for appellees.

McCALL, Justice.

One of the appellants, Security Trust and Savings Bank of Brilliant, Marion County, Alabama, filed a bill in equity under the Declaratory Judgment Act, Tit 7, § 156 et seq., Code of Alabama, Recompiled 1958, to have determined the legality and permissibility of a plan by the appellee, Marion County Banking Company (the Bank), to establish a branch bank in the town of Addison, Winston County, Ala-

bama, and subsequently, branches in other counties throughout the State of Alabama for transacting the banking business. Sixteen other banks were granted leave to intervene in the suit as party complainants. The chancellor of the Marion County Circuit Court decreed that the appellee Bank has such right. From that final decree, the appellants prosecute the present appeal. The appellants' three assignments of error raise the single issue of the legality of the Bank's plan.

The appellee Bank was incorporated under the name, "Bank of Guin," on June 28, 1905, and in 1908, its name was changed to Marion County Banking Company. The third paragraph of its certificate of incorporation provides:

"The location of the principal office of said corporation shall be in Guin, Alabama, but it may have branch offices authorized to transact business in any County in the State of Alabama."

Act No. 76, Acts of Alabama, Regular Session, 1955, p. 314, codified as Tit. 5, § 125(1), Code of Alabama, Recompiled 1958, (Act No. 76 or Tit. 5, § 125(1)) prohibits branch banking, notwithstanding the provisions of any general laws of local application which may become applicable to any county by any future decennial census, but provides:

"The provisions of this Act shall not apply in any county in which branch banking has been authorized by law on or before the effective date of this Act. * * *"

The appellees contend that Marion County Banking Company has continually had the charter power, from the date of its incorporation to the present date to establish branches in any county in the state for the transaction of the banking business, and, that from the date of its incorporation as Bank of Guin, on June 28, 1905, to March 2, 1911, Marion County Banking Company, through its predecessor, Bank of Guin, had statutory authority to establish branch banks in any county in the State

of Alabama. Thirty days after March 2, 1911, Act No. 84, Acts of Alabama, General and Local, 1911, p. 50, now Tit. 5, § 125, Code of Alabama, 1940, (Act No. 84 or Tit. 5, § 125) became effective. Section 28 of this law provides:

"* * * No bank, or any officer, agent or director thereof shall be permitted to establish a branch or office for the transaction of the banking business other than at its principal place of business."

The appellees argue that, having the charter power continuously to the present date, Act No. 84, supra, did not take away this power, and with the passage of the above mentioned Act No. 76, Tit. 5, § 125 (1), Code, Marion County Banking Company's statutory authority to establish branch banks in any county was reinstated in 1955, because that Act provides:

"The provisions of this Act shall not apply in any county in which branch banking has been authorized by law on or before the effective date of this Act. * * *"

Therefore, the appellees insist that the Bank is not prohibited by the statutes from exercising its power to establish branches in any county in the state for the transaction of the banking business.

The appellee Bank was incorporated under existing laws in 1905, namely, Act No. 395, Acts of Alabama, General and Local, 1903, p. 310, (Act No. 395) which is entitled "To confer and limit the powers of business corporations and to provide for their organization and regulation." This Act provides, in § 2(b), that the certificate of incorporation shall set forth the object or objects for which the corporation is formed, and, in § 2(c), the location of the corporation's principal office in this state.

In Act No. 395, § 16, p. 324, the powers of a banking corporation are expressly provided for and branches or offices for the transaction of the banking business in other counties in the state is not one of them. Neither does the Act provide that banks,

organized thereunder, shall have and exercise the powers conferred by law on corporations generally except as limited or modified by the incorporation statute.

Act No. 395 provides, in § 2(j) thereof, that the certificate of incorporation may also contain any other provision which the incorporators may choose to insert for the regulation of the business and for the conduct of the affairs of the corporation, creating, regulating and defining the powers of the corporation, the directors and stockholders, or any class or classes of stockholders; provided, that such provisions be not inconsistent with the Act. However this authorization, extended in the formation of corporations generally, is proscribed by the subsequent § 16 of the Act, which expressly provides what powers a corporation, formed for the purpose of carrying on the business of banking, may engage in, and branch banking is not among those powers. Further, § 22 of the same Act provides that no corporation, other than corporations formed for the purpose of carrying on the business of banking or trust companies doing a banking business, shall engage in or carry on the business of banking in this state. In connection with this provision, § 2(j) of Act No. 395, attention is directed also to § 25 of the Act, which enacts in substance, that all corporations formed to carry on any private enterprise or enterprises, excepting banking, insurance, and building and loan companies, may engage in business as natural persons may, and may exercise all such powers as are expressed in the certificate of incorporation, if not inconsistent with any provision of this Act or of the Constitution of this state.

■ We conclude that the legislature, by enacting this legislation, intended to and did draw a distinction between general or ordinary business corporations and those formed for the purpose of carrying on the business of banking, expressly limiting their powers to those set forth in § 16 of Act No. 395, and those which by implication are incidental thereto.

The Code of Alabama, 1887, Tit. 1, Private Corporations, Chap. 1, Banks and Banking, § 1525(4), Powers of Corporation, makes no mention of branch banking. It provides that such corporation, when organized, has power to appoint such officers and agents as the business of the corporation requires, removing them at pleasure, prescribe their duties, and fix their compensation. In the succeeding Code of Alabama, 1896, Chap. 28, Corporations, Article 1, Banks and Banking, there is an addition to the statute, § 1525(4), of the Code of 1887, so that the corresponding § 1089(4) in the Code of 1896, reads as follows:

"To appoint such officers and agents as the business of the corporation requires, removing them at pleasure, prescribe their duties, and fix their compensation, *and may fix and locate offices, agents and agencies at pleasure in the state, other than the principal place of business.*" (Italics supplied)

Thus was added to § 1525(4), Code of Alabama, 1887, by the amending Act No. 3, Acts of the General Assembly of Alabama, 1892–93, p. 7, the portion which is italicized above; and, the statute as amended appeared as § 1089(4), as quoted above, in the Code of Alabama, 1896.

Later, Act No. 395, approved October 2, 1903, providing a general and uniform law for the organization and regulation of all classes of business corporations, brought about a complete revision and consolidation of earlier Alabama corporation statutes. This Act omitted the former express provision, authorizing branch banking, that is a part of § 1089(4), Code of 1896, which states:

" * * * and may fix and locate offices, agents and agencies at pleasure in the state, other than the principal place of business."

■ The appellee banking corporation was formed therefore under the general statute, Act No. 395, Alabama City, G. & A. Ry. Co. v. Kyle, 202 Ala. 552, 81 So. 54, which took the place of and re-

pealed the provision of former Code § 1089(4), Code of 1896, expressly authorizing branch banking. Parts of an Act of the legislature which are omitted from that which is a complete revision of the law on the subject are annulled and repealed. American Standard Life Ins. Co. v. State, 226 Ala. 383, 147 So. 168; Allgood, Auditor v. Sloss-Sheffield Steel and Iron Co., 196 Ala. 500, 71 So. 724.

There was therefore no express statutory law in existence, when the appellee corporation was formed, authorizing the Bank to fix and locate offices, agents and agencies at pleasure in the state. That provision had been removed from the statutes of the state by Act No. 395. The status, in this respect, in which the law then existed, had reverted to that found in § 1525(4), Code of Alabama, 1887, which likewise gave no express statutory authorization or power to a banking corporation to establish branch banks or offices at places other than at the location of the principal place of business for transacting the banking business.

■ In the preparation of the certificate of incorporation, under Act No. 395, the incorporators of the appellee Bank set forth that the location of the principal office of the corporation was at Guin, Alabama, and added: " * * * but it may have branch offices authorized to transact business in any County in the State of Alabama." As stated, Act No. 395 provides no express authority for such action, or a grant of such power to a corporation, formed thereunder to engage in branch banking; and consequently, the appellee Bank acquired none under Act No. 395, unless such authority arose as a necessary incident to the incorporation.

"Powers not expressly granted to a corporation, or powers not necessarily incidental to those expressly granted thereto, are without the power of the corporation; and acts or contracts of or for the corporation outside of the powers thus granted are ultra vires and void. * * *" Alabama Red Cedar

Co. v. Tennessee Valley Bank, 200 Ala. 622, 623, 76 So. 980; citing A. G. S. R. R. Co. v. Loveman, 196 Ala. 683, 72 So. 311; See also Magee, Banks & Banking, p. 21.

" * * * It cannot be maintained that a corporation may by the mere wording of its charter or an amendment thereto be empowered to do things not permitted by or that are inconsistent with the general statute law under and by virtue of which it is created, and from which it derives all the powers and privileges that it has. * * *" Bruner v. Citizens' Bank, 134 Ky. 283, 288, 120 S.W. 345, 346.

■ The corporation is an artificial being of legislative creation, having no powers or properties, other than the law confers on it, or which may be incidental to its very existence. There is no authority of law for introducing more into the certificate of incorporation, than is given by the law, and if more is introduced, it is mere surplusage, not adding to, or detracting from the force of the certificate. Grangers' Life and Health Insurance Company v. Kamper, 73 Ala. 325; Sheldon v. Birmingham Building & Loan Association, 121 Ala. 278, 25 So. 820; Fairhope Single Tax Corp. v. Melville, 193 Ala. 289, 69 So. 466.

Commenting on this point, the court in Grangers' Life and Health Insurance Company v. Kamper, supra, 73 Ala. at 342, said:

" * * * Of every corporation formed under the general law, the law itself becomes the charter, defines and enumerates the powers which are to be exercised, the nature and extent of corporate franchises and privileges. The declaration of incorporation—the constitution and by-laws adopted for corporate government, do not form the charter, or define or enumerate the corporate powers. These are the acts of the corporators. The charter is the grant from the sovereign power of the

State; and by that source only can be varied or enlarged. * * *"

The appellees concede that unless provided by statute, a bank has no right to establish and maintain branch banks. They argue however, that for the right to exist, it need not be "expressed" by statute, but if any other type of corporation could so act under the provisions of the General Incorporation Act, Act No. 395, so could a banking corporation, because no distinction was made in this regard prior to § 28 of Act No. 84, General Acts, Alabama, 1911, p. 50, which is now codified as Tit. 5, § 125, Code of Alabama, Recompiled 1958, and provides:

"* * * No bank, or any officer, agent or director thereof shall be permitted to establish a branch or office for the transaction of the banking business, other than at its principal place of business."

We disagree with the appellees' contention that if other types of corporations can locate offices, agents and agencies in the state other than at the principal place of business, it follows that a banking corporation can do a branch banking business. Banks stand in the intimate relation of a fiduciary to those who are their customers, depositors, stockholders, and associate banks, as well as the public generally, whose members are affected by their operation. Ordinary corporations handle their own money, but banks handle the money of other individuals. They are quasi-public corporations by nature, subject to regulation and supervision by the state. McDavid v. Bank of Bay Minette, 193 Ala. 341, 69 So. 452; Ex parte Tennessee Valley Bank, 231 Ala. 545, 166 So. 1; Michie, Banks and Banking, Vol. 1, Chap. 1, § 3. Therefore, banks are not entitled to the same freedom of operation that ordinary corporations are privileged to engage in. Banks are created for a more limited and special purpose than corporations for the conduct of ordinary business, 9 C.J.S. Banks and Banking § 41,

p. 79, and no rational criteria can be drawn, corollating the powers of a general corporation to those of a banking corporation.

Branch banking is not, in our opinion, a necessary incident to the business of banking. It may be desirable, but it is not needed in order to carry on a banking business.

In Bruner v. Citizens' Bank, 134 Ky. 283, 120 S.W. 345, 349, it is held that in the absence of express legislative authority, the power of a state bank to establish a branch does not follow by implication as a reasonable or necessary incident to the right to do a banking business. The court said:

"If branches were necessary to enable banks to carry on their business, we would not be disposed to interfere with their establishment; but this feature of the case does not present any difficulty, because it cannot be said that branches are necessary to enable a banking institution to fulfill the purposes of its creation, although they might widen the field of its opportunities and increase its capacity to earn money for its stockholders. * * *"

In First National Bank in St. Louis v. State of Missouri, 263 U.S. 640, 659, 44 S.Ct. 213, 216, 68 L.Ed. 486, the court said:

"* * * The mere multiplication of places where the powers of a bank may be exercised is not, in our opinion, a necessary incident of a banking business, * * *"

There are two other points that are significant in this case. The first is that the legislature at one time expressly provided for multi-county branch banking under § 1089(4), Code of 1896, and then, by enacting Act No. 395 in 1903, deleted that power or authority from the General Incorporation Law; and second, since the passage of Act No. 84, in 1911, the legislature has enacted legislation, local or

**514**

general of local application, in each instance where branch banking has been established, limiting that authority in scope, however, to county bounds, and not crossing county lines. This course of action, on the part of the lawmakers of the state, is strong indication that that governmental body, at least, regards authority to branch bank as a subject to be dealt with by express legislation, and not one to be implied as a necessary incident to the banking business. This of itself deserves our consideration in reaching a decision in this case.

█ If the provisions of Act No. 76, prohibiting branch banking, are inapplicable to Marion County, because branch banking is or has been authorized there, that would leave conditions in the same status as before the enactment of Act No. 76—the Act having no application where branch banking is or has been authorized. If the Act has no application in the county, then the Act cannot reinstate or establish a right in the appellee Bank to branch bank in other counties. The Act does not undertake to authorize branch banking across county lines, because multi-county branch banking may, at one time, have been authorized in the county. The Act states that its provisions of prohibition against branch banking, do not apply, if branch banking has been authorized in the county. Under such conditions, Act No. 76 neither gives the right, nor takes it away. It is simply inapplicable. That being the case, since the appellee has never been authorized or given power to branch bank across county lines, Act No. 76 did not reinstate or establish this power in the appellee Bank.

The trial court erred in holding that the appellee Marion County Banking Company had the power and authority to establish a branch to transact a banking business in the town of Addison, Winston County, Alabama, and to establish branch banks in any other county in the state. For the errors stated, the final decree of the trial court is reversed and the case is remanded to that court.

Reversed and remanded.

HEFLIN, C. J., and SIMPSON, MERRILL and COLEMAN, JJ., concur.