BLUE CROSS OF SOUTHWESTERN VIRGINIA, ET AL.

V.

COMMONWEALTH OF VIRGINIA, EX REL. VIRGINIA ASSOCI-
ATION OF LIFE UNDERWRITERS, INC., ET AL.

Record No. 850395

January 17, 1986

Present: All the Justices

*John D. Eure (Ronald M. Ayers; Jennings T. Bird; Johnson, Ayers & Matthews; Bird, Kinder & Huffman,* on briefs), for appellants.

*C. Richard Cranwell (Cranwell, Flora & Moore, P.C.,* on brief), for appellees.

*Amicus Curiae: Blue Cross and Blue Shield of Virginia (R. Gordon Smith; Gilbert E. Schill, Jr.; Thomas E. Spahn; McGuire, Woods & Battle,* on brief), for appellants.

*Monticello Service Agency, Inc. (Samuel W. Hixon, III; Margaret I. Bacigal; Williams, Mullen & Christian, P.C.,* on brief), for appellants.

*AT&T Communications of Virginia, Inc. (Michael J. Morrissey; Edward L. Flippen; Donald G. Owens; Mays, Valentine, Davenport & Moore,* on brief), for appellants.

THOMAS, J., delivered the opinion of the Court.

This is an appeal of right from a proceeding before the State Corporation Commission in which the Commission held that Blue Cross and Blue Shield of Southwestern Virginia[1] (Blue Cross) " 'engaged in another business' through its ownership and operation of Cardinal Agency, Inc. in violation of Virginia Code § 38.1-828." The Commission enjoined Blue Cross from further violation of the statute and ordered it to "divest itself of ownership and operation of Cardinal Agency, Inc." Blue Cross contends that the Commission erred in its rulings.

The Commission found the following facts: In April 1975, Blue Cross created Cardinal, a Virginia stock corporation, as a wholly owned subsidiary. From its creation, through the date of the Commission's order, Cardinal was licensed as a life and health agent authorized to solicit insurance from three life insurance companies. Cardinal was created to provide Blue Cross with the capability of offering its subscribers a "package" of insurance coverage including "not only group health and hospitalization coverage but life and disability coverage as well."

Cardinal's agents were all employees of Blue Cross. More specifically, they were Blue Cross market representatives who were licensed through Cardinal to sell life and disability insurance. This arrangement enabled the Blue Cross representatives to supplement their Blue Cross salaries with commission payments from Cardinal on the sale of life and disability insurance.

From Cardinal's creation in 1975 through mid-1980, all Cardinal directors were employees of Blue Cross. In addition, during that time period, Cardinal and Blue Cross shared the same registered agent, outside counsel, accounting firm, and office location.

---

[1] When these proceedings were initiated in 1981, the defendants included Blue Cross of Southwestern Virginia and Blue Shield of Southwestern Virginia, two separate corporate entities. These entities were consolidated in 1982 to form Blue Cross and Blue Shield of Southwestern Virginia, a single entity.

In 1980 — in response to an Attorney General's opinion that a similar Blue Cross arrangement violated Code § 38.1-828[2] — Blue Cross made certain changes in the structural arrangements between Blue Cross and Cardinal.

Despite the changes, according to the Commission's findings, "many aspects of the parent and subsidiary remain[ed] intertwined." Cardinal's sales force continued to be derived entirely from Blue Cross representatives. Commissions from sales of life insurance through Cardinal continued to supplement the basic salaries of the Blue Cross representatives. Payroll services and fringe benefits, including expense accounts and cars, continued to be provided through Blue Cross. Mail and copy services continued to be furnished to Cardinal from Blue Cross at cost, "with no service or interest charges to the subsidiary." Cardinal continued to use Blue Cross monthly sales meetings to discuss Cardinal business. Cardinal's agents continued to carry no business cards except their Blue Cross business cards. Cardinal continued to use the Blue Cross computer customer list. Blue Cross representatives continued the procedure of not keeping time or mileage records concerning time spent on Cardinal's business as opposed to Blue Cross's.

The Commission concluded that Cardinal was undercapitalized as an insurance agency. The Commission found further that at the time of the hearing, Cardinal had not declared a dividend in its entire corporate history, and that in 1982 Cardinal was only "marginally profitable."

The Commission also made reference to a September 1980 "Operating Agreement" between Cardinal and Blue Cross in which Blue Cross agreed to provide certain enumerated services in Blue Cross's "sole discretion." Also, the Commission referred to a tripartite settlement agreement in which Cardinal gave up a claim against one Hudson who in turn gave up a claim against Blue Cross. The Commission found that these agreements were not in Cardinal's best interest.

The Commission ruled that "Cardinal is merely a facade for the operations of its sole shareholder." According to the Commission, "Cardinal is the vehicle by which [Blue Cross] has at-

---

[2] In 1973, Blue Cross-Blue Shield of Virginia acquired 100% ownership of the Monticello Service Agency, Inc. Monticello sold life insurance solely in connection with Blue Cross-Blue Shield of Virginia and through salesmen who were also licensed to sell Blue Cross-Blue Shield coverage. In an opinion dated April 23, 1979, the Attorney General concluded that the arrangement violated Code § 38.1-828.

tempted to expand its own corporate powers far beyond the applicable statutory constraints."

Blue Cross advances a myriad of arguments to challenge the Commission's disposition of this matter; all are without merit.

Blue Cross contends that the Commission found a violation of Code § 38.1-828 either because it pierced the corporate veil between Cardinal and Blue Cross or because the Commission concluded that Blue Cross could not do indirectly that which it could not do directly. Blue Cross argues that the corporate veil cannot be pierced under the facts of this case. Blue Cross argues further that the principle that a regulated corporation such as Blue Cross cannot do indirectly that which it cannot do directly has been abandoned by the Commission. Consequently, according to Blue Cross, the Commission erred in finding a violation of Code § 38.1-828. We disagree.

To resolve this appeal, we need not discuss Blue Cross's arguments concerning indirect activity and piercing the corporate veil; those arguments are irrelevant. This is a case of direct activity.

Blue Cross is a creature of statute. It is not a corporation of general powers. It is not an insurance company. It is a unique entity created and constrained by statute. In a concurring opinion in *Blue Cross* v. *Commonwealth*, 211 Va. 180, 193, 176 S.E.2d 439, 447 (1970), Justice Cochran explained that the special status of Blue Cross means that efforts by Blue Cross to expand its activities beyond what is set forth in the statutes will be strictly limited:

> *Blue Cross is the creature of statutes enacted for the purpose of enabling hospitals and doctors to operate plans, administered by a corporate agent, offering prepaid hospital and medical services to subscribers.* The subscribers are thereby benefited by receiving relief from the overwhelming expense incident to catastrophic illness. Participating hospitals and doctors benefit from assured payment for services rendered to many persons of modest resources who might otherwise be unable to pay.

> The worthy purposes of Blue Cross have received legislative approval and, indeed, Blue Cross enjoys a unique preference in the form of tax immunity. While recognizing that Blue Cross was not created for the purpose of acting as an insurance company, the Legislature was bound to see that it

would directly compete with such taxpaying companies selling hospitalization and medical insurance.

Viewed against this background *the authority of Blue Cross to expand its activities, depending entirely upon statute, must be strictly construed.*

(Emphasis added.) In essence, Blue Cross cannot expand its operations unless a statute permits it to do so.

■ The issue in this case was whether Blue Cross should be enjoined from allegedly violating Code § 38.1-828, which reads in pertinent part as follows: "Any corporation subject to the provisions of this chapter shall not engage in any other business. . . ." The Commission concluded that through its ownership and operation of Cardinal, Blue Cross itself was "engaged in another business."

In its order and opinion, the Commission does not state whether Blue Cross violated the statute because of direct activity or because of indirect activity. However, it is plain to us from a review of the order and opinion that the Commission established that Blue Cross directly violated the statute.

■ The facts make out a clear case of direct activity by Blue Cross. Blue Cross's sales representatives sold life insurance. When they sold life insurance they drove Blue Cross's cars, they worked on Blue Cross's time, they used Blue Cross's computer list of customers, and they discussed the sale of life insurance at Blue Cross's sales meetings. This is activity by Blue Cross that violates Code § 38.1-828. The Commission's opinion encompasses direct Blue Cross activity as part of its rationale. This alone is sufficient to support the conclusion reached by the Commission.

■ Furthermore, the Commission's decision rests upon another dispositive ground. The Commission also found a violation of Code § 38.1-217.8, which prohibits investments that in the Commission's opinion are designed to evade any prohibition of Title 38.1. The Commission concluded that Blue Cross's investment in Cardinal was an effort to evade Code § 38.1-828. Blue Cross does not seriously challenge this independent basis for the Commission's decision. Blue Cross simply describes this basis of the opinion as a "bootstrap" argument. We are not persuaded by Blue Cross's argument.

■ Next, Blue Cross argues that it should be allowed to continue to operate Cardinal because (1) the insurance commissioner

gave his oral approval to the arrangement, (2) the General Assembly acquiesced in that approval, and (3) the Attorney General took no action against Blue Cross. Again, we disagree. First, under the circumstances of this case, the insurance commissioner's oral approval cannot bind the Commission. Second, because the commissioner's claimed approval was never made public, the General Assembly had nothing in which to acquiesce. Third, the Attorney General's failure to pursue Blue Cross does not prevent the Commission from making a decision on the merits when confronted with the pertinent facts.

■ We also think the Commission correctly decided that the sale of life and disability insurance is not related to the sale of prepaid health coverage. As appellee Virginia Association of Life Underwriters argues, the need for life insurance arises only after the need for health insurance is over.

■ Blue Cross challenges the remedy of divestment of Cardinal as excessive. This argument is also unpersuasive. Blue Cross cites no authority for the proposition that in a case where a regulated corporation is engaged in prohibited activity, the Commission is not allowed to order such corporation to terminate its wrongful conduct. In our opinion, the remedy settled upon by the Commission was reasonable and necessary.

■ Blue Cross also advances two procedural arguments; neither is persuasive. First, Blue Cross contends that a private litigant cannot initiate a show cause proceeding before the Commission. A review of the Commission's rules exposes the weakness of this argument. Commission Rule 5:7(b) clearly contemplates a situation where a show cause proceeding is initiated by a private individual. Further, Commission Rule 4:11 contains the catchall provision that show cause proceedings can be initiated for certain specified reasons or "for other good cause." Here, the Commission reasonably could have concluded that there was good cause for it to proceed as it did.

■ Second, Blue Cross argues that the Commission acted improperly in allowing an amendment which had the effect of converting the case from a declaratory judgment action into a show cause proceeding. We disagree. Commission Rule 5:11 gives the Commission broad authority to permit amendments. We find no abuse of that authority in this case.

528

In light of the foregoing, the decision of the Commission will be affirmed.

*Affirmed.*