This is an insurance case requiring statutory interpretation of certain laws pertaining to Blue Cross and Blue Shield of Alabama (Blue Cross).
This case originated when Blue Cross filed a "Form A" with the commissioner of the Alabama Department of Insurance (commissioner), by which it sought his approval of its proposed acquisition of United Trust Life Insurance Company (United Trust), an Alabama life insurance company. Protective Life Insurance Company, the Alabama Association of Life Insurance Companies, and the Health Insurance Association of America (intervenors) intervened in the proceedings held before the commissioner, opposing the proposed acquisition. The commissioner issued an order approving the acquisition.
The intervenors appealed the commissioner's order to the Montgomery County Circuit Court. Following ore tenus
proceedings, the circuit court overruled and vacated the commissioner's order and entered a judgment in favor of the intervenors. The circuit court concluded that it was not permissible under the statutes governing Blue Cross for it to acquire ownership and control of United Trust and to use that subsidiary to market life insurance.
Blue Cross, through able counsel, appeals. We affirm.
 I
Blue Cross is purely a statutory creature. Its purpose and all of its powers are derived from Ala. Code (1975), §§ 10-4-100
through -115 (1980 Repl. Vol.). The question now before this court is thus one of statutory interpretation — whether §§10-4-100 through -115 permit Blue Cross to acquire a subsidiary and use it to market life insurance.[1] Accordingly, we find theore tenus rule, which is advanced by the intervenors, to be inapplicable.
The cardinal rule in interpreting legislation is to determine the intent of the legislature, which is determined by examining the statute as a whole, in light of its general purpose.Gulf Coast Media, Inc. v. Mobile Press Register, Inc.,470 So.2d 1211 (Ala. 1985); Mitchell v. State Child Abuse NeglectPrevention Board, 512 So.2d 778 (Ala.Civ.App. 1987). *Page 127 
Words in the statute should be given their natural, plain, ordinary, and commonly understood meaning. See Alabama FarmBureau Mutual Casualty Insurance Co. v. City of Hartselle,460 So.2d 1219 (Ala. 1984); Mitchell, 512 So.2d 778.
In interpreting the statutes governing Blue Cross, we can only conclude that it was not the intent of the legislature that Blue Cross enter the field of life insurance.
Ala. Code (1975), § 10-4-100 sets forth the single purpose for which Blue Cross was organized: that of "establishing, maintaining and operating a health care service plan under which health services are furnished to such of the public who become subscribers to such plan." Thus, the one purpose set forth by the legislature for the organization of Blue Cross is the maintenance of a health care service plan for subscribers. Though it is not pertinent to the question before us, it is interesting to note that the evidence shows that, in carrying out its legislative purpose, Blue Cross has apparently become the largest hospital and medical insurer in the state.
Blue Cross contends that the trial court erred in focusing its attention on § 10-4-100 and that it has the legal authority to acquire United Trust under what it characterizes as broad grants of power given by §§ 10-4-101 and -103.
Section 10-4-101 specifies those items which Blue Cross's certificate of incorporation must contain. It also provides, however, that the certificate "may also contain any other provisions, not inconsistent with the provisions of this article, which the incorporators may desire to insert for the regulation of the business or affairs of the corporation or which would be permitted nonprofit corporations by chapter 3 of this title." Ala. Code (1975), § 10-3A-20(7) (1986 Cum.Supp.), which is part of the aforementioned "chapter 3," grants to nonprofit corporations the power to purchase or otherwise acquire the shares of other corporations, whether they be for profit or nonprofit corporations.
Blue Cross contends that § 10-4-101 provides it with the authority of a nonprofit corporation to acquire the shares of United Trust. We disagree.
Section 10-4-101 provides that Blue Cross's certificate of incorporation may contain additional provisions, including those permissible for nonprofit corporations under Alabama law, but such provisions must be "not inconsistent with the provisions of this article." In other words, Blue Cross may not acquire the shares of another corporation if it would be inconsistent with any of the provisions of §§ 10-4-100 through -115.
Blue Cross contends that the term "inconsistent" as used in § 10-4-101 must be given its plain, ordinary meaning and that "inconsistent" must thus be construed to mean "contradictory" or "mutually repugnant." See City of Mobile v. Collins,24 Ala. App. 41, 130 So. 369 (1930); Black's Law Dictionary 689 (5th ed. 1979). Blue Cross argues that its acquisition of United Trust is permissible because the evidence shows that marketing life insurance is not inconsistent with, or mutually repugnant to, marketing health insurance.
We will assume for purposes of argument that the marketing of both health insurance and life insurance by the same company is not contradictory and may, in fact, be profitable. Such, however, is not the issue before this court. Rather, the issue is whether the marketing of life insurance by Blue Cross, even through the use of a subsidiary, is inconsistent with the statutory provisions governing Blue Cross. Put another way, the issue is whether Blue Cross's interpretation of § 10-4-101 as empowering it to acquire a subsidiary through which to market life insurance can have "concurrent operative effect," Belknapv. Shock, 125 W. Va. 385, 391, 24 S.E.2d 457, 460 (1943), with § 10-4-100 and the other statutes governing Blue Cross. We conclude that it cannot.
The powers possessed by a corporation can be no broader than the purposes for which it is organized. See Blue Cross BlueShield of Connecticut v. Mike, 184 Conn. 352, 439 A.2d 1026
(1981). This is particularly the case where the corporation is organized for special, as opposed to, general *Page 128 
purposes. "Corporations organized for special purposes are limited in their powers to the purposes for which they are organized." Mike, 184 Conn. at 355, 439 A.2d at 1029. See alsoWoodyard v. Arkansas Diversified Insurance Co., 268 Ark. 94,594 S.W.2d 13 (1980); Blue Cross of Southwestern Virginia v.Commonwealth, 230 Va. 521, 338 S.E.2d 849 (1986).
The Alabama Supreme Court has recognized the distinction of limited purpose corporations and the effect such a limitation has on corporate powers. See Bauman v. Hayes, 379 So.2d 1251
(Ala. 1980); Security Trust Savings Bank v. Marion CountyBanking Co., 287 Ala. 507, 253 So.2d 17 (1971).
There can be no doubt that Blue Cross is a special purpose corporation, organized under § 10-4-100 for the specific and limited purpose of maintaining a health care service plan for subscribers. Cf. Mike, 184 Conn. 352, 439 A.2d 1026. Marketing life insurance is not included in this limited statutory purpose and is thus impermissible.[2] Cf. Woodyard, 268 Ark. 94,594 S.W.2d 13; Mike, 184 Conn. 352, 439 A.2d 1026; Blue Crossof Virginia, 230 Va. 521, 338 S.E.2d 849.[3]
Although the language of § 10-4-101 may appear to be a broad grant of power to Blue Cross, such grant can be no greater than, i.e., must not be "inconsistent with," the limited statutory purpose of Blue Cross set forth in § 10-4-100. Clearly, the power to acquire a subsidiary through which to market life insurance would exceed, and thus contradict, Blue Cross's limited statutory purpose. Blue Cross's interpretation of § 10-4-101 as giving it this power is incorrect.
Blue Cross makes a similar argument with regard to Ala. Code (1975), § 10-4-103, as that it asserts for § 10-4-101. Section10-4-103 provides that Blue Cross is to be managed by a board of directors "with the powers and authority necessary or incidental to the purposes of the corporation."
Blue Cross contends in brief that the necessary and incidental powers referred to in § 10-4-103 include "anything 'appropriate and suitable for the purposes for which the corporation was organized.' Cadden v. Ladd, 358 So.2d 437, 439
(Ala. 1978), quoting Paterson [ ] Edey Lumber Co. v. Bank ofMobile, 203 Ala. 536, 538, 84 So. 721, 722 (1919)."
In response, we would simply note again that the powers granted to Blue Cross by § 10-4-103 can be no greater than its limited statutory purpose of maintaining a health care service plan for subscribers. We do not think that the sale of life insurance through a subsidiary can be characterized as incidental to, or even appropriate for, this limited purpose. The fact that marketing both types of insurance may be desirable or profitable to Blue Cross does not mean that such marketing is necessary and incidental to Blue Cross's limitedraison d'etre. Cf. Security Trust Savings Bank, 287 Ala. 507,253 So.2d 17.
We find that the learned and distinguished trial judge correctly interpreted the statutes governing Blue Cross as making it impermissible for Blue Cross to acquire United Trust and to market life insurance through that corporation.
 II
Blue Cross also contends on appeal that the intervenors do not have standing to challenge the commissioner's order which approved the proposed acquisition of United Trust. It claims that the intervenors *Page 129 
are merely competitors and that fear of increased competition by Blue Cross is not a valid grievance to confer standing.See Alabama State Florists Association v. Lee County HospitalBoard, 479 So.2d 720 (Ala. 1985).
We would tend to agree with this contention were it not for the fact that standing is conferred on the intervenors by statutes governing the administrative proceedings before the commissioner and appeal therefrom. The intervenors are not simply challenging the acts of Blue Cross as being ultra vires, but are appealing the order of the commissioner, and this case is thus distinguished from Alabama State Florists Association.
The administrative proceedings were conducted pursuant to Ala. Code (1975), § 27-29-3(d) (1986 Repl. Vol.), which requires the commissioner to conduct a public hearing before approving any merger or acquisition of control of one insurance company over another. Section 27-29-3(d)(2) provides that at the hearing "any . . . person whose interest may be affected thereby shall have the right to [participate]."
Ala. Code (1975), § 27-2-30(d), which also governs hearings before the commissioner, provides that the commissioner shall allow persons "whose pecuniary interests are to be directly and immediately affected by the commissioner's order made upon the hearing" to become parties to the hearing by intervention.
There is no doubt that the intervenors were properly permitted to become parties to the hearing before the commissioner on Blue Cross's application for approval for the acquisition of United Trust. In fact, as competitors of Blue Cross, the intervenors had a direct financial interest that would be affected by the commissioner's order. Cf. AlabamaPower Co. v. Alabama Public Service Commission, 278 Ala. 597,179 So.2d 725 (1965).
Blue Cross does not seriously challenge on appeal the right of the intervenors to have participated in the proceedings before the commissioner, but focuses upon their appeal from such proceedings. The latter is specifically addressed by Ala. Code (1975), § 27-29-13. Section 27-29-13(a) provides that "[a]ny person aggrieved by any act, determination, rule, regulation or order or any other action of the commissioner pursuant to this chapter may appeal therefrom. . . ."
Blue Cross contends that the intervenors lack standing under § 27-29-13(a) because their only grievance is fear of competition from Blue Cross. We disagree. Blue Cross is attempting to place restrictions on standing to appeal under §27-29-13(a), which we do not think was the intent of the legislature.
In determining such legislative intent, we must give to the phrase "person aggrieved by [the] order or any other action of the commissioner" its natural, plain, ordinary, and commonly understood meaning. See Alabama Farm Bureau Mutual CasualtyInsurance Co., 460 So.2d 1219; Mitchell, 512 So.2d 778.
Black's Law Dictionary 60 (5th ed. 1979) defines an aggrieved party as "[o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly affectedby a decree or judgment." (Emphasis supplied.) This definition is quite similar to the language contained in § 27-29-13(a) itself.
As competitors of Blue Cross, the intervenors clearly had a pecuniary interest that was directly affected by the commissioner's order. Cf. Alabama Power Co., 278 Ala. 597,179 So.2d 725.
Our interpretation of § 27-29-13(a) is reinforced by Ala. Code (1975), § 27-2-32(a), which governs appeals from hearings before the commissioner. Section 27-2-32(a) broadly grants the right to appeal from such hearings to "[a]ny person who was a party to [the] hearing."
The intervenors were not simply competitors of Blue Cross, but were parties to the proceedings before the commissioner on Blue Cross's application to acquire United Trust. As such, they have the right to appeal from those proceedings under §27-2-32(a).
Blue Cross also contends that the intervening associations lack standing because *Page 130 
they have no grievance apart from that of their members and that they must be able to show injury in their capacity as associations to have standing. In support of this contention, Blue Cross cites a 1953 Alabama case, City of Birmingham v.Fairview Home Owners Association, 259 Ala. 500, 66 So.2d 775
(1953).
Although City of Birmingham may have once governed the standing rights of associations in this state, it does not today. Under the standing rules set forth by the United States Supreme Court in Warth v. Seldin, 422 U.S. 490, 511,95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975), an association may have standing solely as the representative of its members. SeeAlabama State Florists Association, 479 So.2d 720.
We agree with the circuit court that the intervenors had standing to appeal the commissioner's order.
The judgment of the circuit court is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur.
[1] Blue Cross has attempted to characterize the issue as only whether it may acquire the stock of United Trust, not whether it may market life insurance through that subsidiary. It is clear, however, from the Form A Blue Cross filed with the commissioner that such is its intention, and we, therefore, find the legality of such intention to be the key issue before this court.
[2] While we do not find it necessary to resort to the legislative history of § 10-4-100 and the other statutes governing Blue Cross to resolve the question of statutory interpretation now before us, we find it highly interesting that the legislature has rejected on at least two occasions Blue Cross's attempts to broaden its limited statutory purpose.
[3] We agree with Blue Cross that the cases of other jurisdictions are not direct precedent for our decision in this case since we are faced with a question of interpreting Alabama law. Because the question is one of first impression, however, we find the cases of other jurisdictions which have faced similar issues particularly helpful. We note that the appellate courts of Connecticut, Virginia, and Arkansas in the cases cited in the text have rejected the efforts by the Blue Cross corporations in those states to enter the field of life insurance.