# Roofing and Sheet Metal Contractors' Association of Philadelphia.

*Corporations—Charter of the first class—" Encouragement and protection of trade and commerce "—Act of April* 29, 1874, *P. L.* 73, *sec.* 2.

Under the Act of April 29, 1874, sec. 2, clause 11, providing for corporations for " the encouragement and protection of trade and commerce," a charter may be granted for the promotion of the interest of a particular trade, as well as for the promotion of trade and commerce in general.

A charter for a corporation of the first class may be granted where the purpose set forth in the application is " to foster, protect and promote the welfare and interest of persons engaged in roofing and sheet metal working; and for the protection and encouragement of such trade and commerce, by combining the intelligence and influence of members against imposition and fraud, as experience may from time to time prove needful; by bringing about greater uniformity or certainty in business connections, and by establishing closer ties of business association among the members."

MESTREZAT, J., dissents.

Argued Jan. 30, 1901. Appeal, No. 329, Jan. T., 1900, by David D. Lupton et al., from order of C. P. Phila. Co., March T., 1900, No. 836, refusing application for a charter in In re Roofing & Sheet Metal Contractors' Association of Philadelphia. Before McCOLLUM, C. J., MITCHELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Application for charter.

*Error assigned* was in not approving charter in the form presented.

*Arthur S. Arnold,* for appellant.

OPINION BY MR. JUSTICE MITCHELL, July 17, 1901:

This is an application for a charter, setting forth that the purposes for which the intended corporation is to be formed, are "to foster, protect and promote the welfare and interest of persons engaged in roofing and sheet metal working; and for the protection and encouragement of such trade and commerce; by combining the intelligence and influence of members against imposition and fraud, as experience may from time to time prove needful; by bringing about greater uniformity or certainty in business connections, and by establishing closer ties of business association among the members."

The application was referred to a master who reported that he had examined the by-laws, and found them to be in accordance with the constitution of the United States and of the state of Pennsylvania, and with the proposed charter of the association. But he recommended that the charter be refused for want of jurisdiction, in that, inter alia, the business sought to be promoted was not "trade and commerce" within the meaning of the statute authorizing the grant of charters by the courts.

This view was adopted by the court and is tersely expressed by the learned judge below as follows: "The courts are authorized to grant charters of incorporation to companies formed to encourage and protect the trade and commerce of the community generally, and they are not authorized by it to grant charters to associations whose object is to encourage and protect the trade or business of a particular class in the community employed in a mechanical or mercantile pursuit or handicraft as a means of livelihood or profit for those engaged therein."

This is an erroneous construction of the language and intent of the statute. By the Act of April 29, 1874, P. L. 73, sec. 2, corporations of the first class (not for profit) are authorized to be created for any of twelve different purposes specified

(now increased to fourteen by the Act of July 15, 1897, P. L. 284) among which is No. 11, "the encouragement and protection of trade and commerce." These words are used in their popular sense, and include particular trades as well as trade in general. In popular understanding "roofing and sheet metal working" is as plain a description of a trade as carpentering, or bricklaying and mason work, or any other occupation belonging to the class of trades. Each of the numbered subdivisions of this section of the statute describes a particular class of objects, the promotion of which is the purpose of the provision, and to carry out its full intent must necessarily be held to authorize a corporation for one or more, or all, of the special purposes that may come within the general scheme. The promotion of the interest of a particular trade is much more likely to be the object of the seekers of a charter than the promotion of trade and commerce in general. Indeed it may well be doubted whether the probable number of applications for such general purpose would necessitate or even justify the cumbering of the statute book with an act to provide for them. And this must have been well known to the legislature. As already said each subdivision of section 2 of the act provides for a separate class of purposes and describes the class in brief and general terms. But it does not thereby require each charter granted under it to cover every possible form under which the whole purpose of the class may be accomplished. For illustration, the first subdivision is corporations "for the support of public worship." It would be a manifestly unreasonable construction to limit charters under this clause to unsectarian home missions or other corporations looking to the promotion of public worship in general, and to deny charters to churches, however broad and general their purposes, if they proposed to promote public worship through some particular sectarian form. The statute clearly was not meant to have such narrow and limited operation, and yet that is the result to which the construction given it by the court below would inevitably lead.

The judgment is reversed and the charter directed to be approved unless it shall further appear to the court that such charter would be injurious to the community.

MESTREZAT, J., dissents.