WILLIAM B. BRIGGS, on Behalf of Himself and Other Lot Owners of the BLOOMINGDALE CEMETERY ASSOCIATION, Plaintiff, *v.* THE BLOOMINGDALE CEMETERY ASSOCIATION and THE AMERICAN CEMENT AND PLASTER COMPANY, Defendants.

(Supreme Court, Erie Equity Term, December, 1920.)

Cemetery associations — lease of cemetery lands for mining purposes    unlawful — statutes — corporations — injunctions — Membership Corporations Law, § 13.

The general power conferred by section 13 of the Membership Corporations Law on all corporations organized thereunder, to make leases for five years without leave of court, has no application to and does not embrace that part or portion of the lands of the cemetery association, as declared in the last clause of the same section of the statute.

A lease of cemetery lands for mining purposes is not only *ultra vires* but is in contravention of the statute and inconsistent with the objects and purposes for which the lessor was organized, and the court is without power to sanction such a lease without explicit legislative authority.

Assuming the validity of such a lease for five years, a covenant therein giving an absolute right of renewal for a period of fifty years is void as constituting an evasion of the statute

Supreme Court, December, 1920. [Vol. 113.

and in contravention thereof, and the lessor may repudiate the whole lease.

In an action by lot owners of the cemetery association for a permanent injunction against the mining of gypsum rock or tunneling for that purpose under the places of burial in the lands of the cemetery and to carry away all minerals thereunder, plaintiffs will be granted the relief prayed for.

Action for an injunction.

Hamilton Ward, for plaintiff.

Kellogg & Baker, for American Cement and Plaster Company.

Marcus, J. The defendant entered into a contract dated April 9, 1919, whereby the cemetery association granted to the cement and plaster company the exclusive right and privilege of entering in and under the lands of the cemetery, for the term of five years, and for the purpose of mining gypsum; and the contract further permits the cement and plaster company to sink shafts in the cemetery lands, with the written consent of the cemetery association; and further provides that the lease or contract may be renewed for a period of fifty years.

This action was brought to secure a permanent injunction against the mining of gypsum rock or the tunneling for that purpose under the cemetery owned by the Bloomingdale Cemetery Association.

From a careful examination of the question submitted, I find myself unable to agree with the views expressed in the briefs.

I am clear that the general power given (in section 13) to all membership corporations to make leases for five years, has no application and does not embrace the occupied lands of a cemetery mentioned in the last clause of the same section. The general power given

to *all* membership corporations to make a *lease for five years* (section 13) without leave of the court, is limited or restricted by the concluding clause of the same section relating to *cemetery* lands, and which provides that: " Except as otherwise provided in this chapter, no portion of a cemetery * * * which any person is entitled to use for burial purposes, or in which burials have been made and not lawfully removed, shall be sold, mortgaged or *leased.*" Section 82 provides for *sale* of lands of rural cemetery corporations *from which all bodies have been removed.*

These provisions seem to have been founded, to some extent, upon the act of 1871, chapter 419, "An Act to authorize the sale of unoccupied lands of burial ground and rural cemetery associations." 3 R. S. (8th ed.) 1942. This provides for application to the court, with the proviso that " no part or portion of the real estate * * * which has been, now is, or hereafter may be used for actual interments, shall be sold." And, *no* lands shall be sold for any other than cemetery purposes, except as provided in section 1; and by act of 1875, chapter 482, boards of supervisors were empowered to authorize cemetery associations to sell land *not needed* for cemetery purposes.

It would seem, therefore, that the power to lease for five years should be held applicable only to unoccupied lands, that is to say " No portion of which any person is entitled to use for burial purposes, or in which burials have been made and not lawfully removed." I am unable to conceive of any reasonable or usable purpose for which a lease may be granted among the habitations of the dead.

Clearly, the general provision conferring the power to lease upon all corporations of general class or denomination, must be deemed limited by the special provision relating to a particular class, and such pro-

Supreme Court, December, 1920.          [Vol. 113.

visions must control in the particular instance. For, when a general intention is expressed, and also a particular intention, incompatible therewith, the particular intention is to be regarded as an exception; or, to change the expression, where a statute contains two provisions, one special and the other general, the latter will not be construed as including the former, but the special matter will be regarded as in the nature of an exception to the general one.

But still it is contended that the power to give a "subterranean lease," *i. e.,* a mining lease for five years, is not repugnant to or inconsistent with the prohibition of leases of *occupied lands,* due care being exercised for the support of the superincumbent earth and the protection and security of the graves and therefore may be fairly implied from the general grant of power, or, as embraced within its scope by fair and reasonable intendment. That brings up another proposition: That the power to lease means an ordinary lease, and does not imply authority to grant a mining lease. Certainly not a lease for the construction of mines in and under *occupied lands.*

The power conferred to lease cemetery lands must be deemed to mean a lease of the ordinary, common or usual character; that is to say, if the expression be proper, a surface lease, with the right of course to dig or excavate below the surface in and for the usual or ordinary purposes. It cannot be, when the peculiar nature and characteristics of a cemetery inherent in or growing out of the uses and purposes to which it is designed and devoted, that it was within the contemplation of the legislature to empower cemetery associations, whose lands are used or to be devoted to the purpose of burial of the dead, to grant leases for *mining* purposes; to authorize the construction of mines, with all appropriate erections, machinery and

appliances, not only under the unoccupied land, but also under the very graves themselves.

Such purposes are hardly compatible with the uses of a cemetery; nor are the " workings " of a mine conducive to the " repose of the dead." Mining and manufacturing operations within the boundary of a cemetery, and especially when conducted under the places of burial, are not in harmony, if not positively inconsistent with the objects and purposes of a burial ground. They are repellant to the senses of the living, and repugnant to the inner feelings of man.

A mining lease authorizes deep excavations in the earth, the necessary construction work of a rather extensive character, and the removal of great quantities of soil, even from under the very grave, whose extreme ends or bottoms are often said to rest upon China, and surely it cannot be inferred or presumed that the legislature intended to confer upon the corporation the power to grant a lease of so extraordinary a character by granting a general power to lease. That simple word is not adequately or sufficiently comprehensive to embrace within its intendment the execution of an instrument so extraordinary in its scope, operation and effect, and so foreign in its intrinsic character to the objects and purposes for which the corporation was organized and designed. The Rural Cemetery Act of 1847, chapter 133, simply authorizes the corporation to hold lands to be used *exclusively* for a cemetery *or place for the burial of the dead.*

General words in a statute should receive a general construction; but they must be used in reference to the subject-matter in the mind of the legislature, and strictly limited to it. 36 Cyc. 1118. And the usual and ordinary significance of the words used by the legislature is, as a rule, to be adopted. Surely it would be unreasonable to presume or infer that the legislature,

44

Supreme Court, December, 1920.   [Vol. 113.

when dealing with the subject of cemeteries, could have had in mind the thought or idea of *mining leases,* a matter remote from, and rather antagonistic to the subject under consideration.

It is held that a company organized under the Business Corporations Law may not include within its declared purposes the establishment of cemeteries. *Grace* v. *Repose Mausoleums, Inc.,* 78 Misc. Rep. 213. Nor may a cemetery corporation undertake the business of mining, or empower another by contract or lease to conduct mining operations by way of a " requiem for the repose of the dead," without express legislative authority; and since the lands are devoted to a public use or purpose (6 Cyc. 710, 711; *Grace Case, supra*), it is a matter " in which the public has an interest." It is provided " no corporation shall possess or exercise any power not given by law, or not necessary to the exercise of the power so given." Gen. Corp. Law, § 10. Or, as it is judicially expressed, a corporation has no other powers than such as are specifically granted or are necessary for the purposes of carrying into effect those expressly granted, or in furtherance of the general purposes of its creation.

Again, assuming the validity of a mining lease for five years, still a stipulation giving the right of renewal for many years thereafter cannot be sustained. *Hart* v. *Hart,* 22 Barb. 606; *Parish* v. *Rogers,* 20 App. Div. 279; *McCullough* v. *Smith,* 243 Fed. Repr. 823, 832.

Where there is a lease for a definite term, with the privilege of an additional term at the lessee's option, it operates as a lease for a continuous term, if he so elects. *Voege* v. *Ronolds,* 83 Hun, 114; *Swan* v. *Inderlied,* 187 N. Y. 375, 376; *Orr* v. *Doubleday, Page & Co.,* 223 id. 334, 341.

This being so, the provisions for renewals beyond

the limitation of five years must be deemed an attempted evasion of the statute, and therefore void and of no effect.

It is held, however, that where a part of a divisible grant or contract is *ultra vires* or illegal, but not *malum in se,* and the remainder is lawful, the latter may be sustained and enforced unless it appears from a consideration of the whole grant or contract that it would not have been made without the part which is *ultra vires* or illegal. *McCullough* v. *Smith, supra.*

In view of the peculiar nature or character of the lease in question, it is very doubtful whether the lease could justly be adjudged valid for the five-year term; whether the defendant would not have a right to repudiate the whole lease, especially after a judicial determination that the stipulation for renewal was void for want of power in the corporation to make it without leave of the court, but this particular question — whether the defendant would be entitled to repudiate the whole lease (assuming a mining lease to be within the corporate powers) — is not presented for adjudication here, and therefore need not be inquired into or answered.

I conclude, therefore:

*First.* That the general grant of power to all membership corporations to make a lease for five years without leave of the court (§ 13) is limited or restricted by the last clause of the same section relating to cemetery lands; and consequently the power does not embrace the occupied lands, *i. e.,* the part or portion devoted to burial uses. Such portion of the cemetery must be deemed excluded from the general words and the power be left to operate upon the portion outside of and beyond the burial places.

*Second.* That the power to lease means an ordinary, common lease, and does not imply authority to

County Court, Orange County, December, 1920. [Vol. 113.

grant a lease of an unusual or extraordinary character, *i. e.*, a *mining lease*, whereby the lessee is empowered to construct mines, erect machinery, etc., and to excavate the soil under the places of burial and to carry away all the minerals thereunder.

*Third.* Assuming the validity of a mining lease for five years, still a stipulation giving an absolute right of renewal thereof is void as constituting an evasion of the statute and in contravention thereof, the lease being for the continuous term of fifty years at the lessee's election.

*Fourth.* The stipulation for renewal being invalid, the defendant may, it would seem, repudiate the whole lease.

*Fifth.* A lease of cemetery lands for mining purposes being not only *ultra vires* simply, but also in apparent contravention of the statutes and inconsistent with the objects and purposes for which the corporation was organized, it would seem a logical deduction that the court would have no power to authorize or sanction a lease for purposes so foreign, without explicit legislative authority.

Ordered accordingly.