## BLUE CROSS AND BLUE SHIELD OF CONNECTICUT, INC., ET AL. *v.* JOSEPH C. MIKE, INSURANCE COMMISSIONER OF CONNECTICUT, ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and WRIGHT, Js.

Argued April 1—decision released June 9, 1981

*John G. Haines,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (named defendant).

*Ralph G. Elliot,* for the appellants (defendants Travelers Ins. Co. et al.).

*John E. Silliman,* with whom, was *Mark F. Korber,* for the appellees (plaintiffs).

PARSKEY, J. The plaintiff Blue Cross & Blue Shield of Connecticut, Inc. (Blue Cross) applied to the commissioner of insurance (commissioner), pursuant to General Statutes § 38-39b, for permission to acquire by purchase 100 percent of the common stock of the plaintiff American Professional Life Insurance Company (Life). The commissioner denied the application on the ground that the proposed acquisition would not be in the public interest because Blue Cross was not authorized by law to own and operate a life insurance company. The plaintiffs' appeal to the Superior Court was sustained on the ground that the commissioner lacked the authority to deny the plaintiffs' application for the stated reason. We granted certification and now reverse.

I

Blue Cross filed its application under General Statutes §§ 38-39a through 38-391. This act (Public Acts 1969, No. 444) prohibits the take-over of a domestic insurance company without the prior approval of the commissioner. The commissioner is not authorized to approve a proposed acquisition unless he conducts a public hearing and makes the

findings required by § 38-39d (b).[1] One such finding is that the competence, experience and integrity of the acquiring corporation are such that it would be in the public interest for such acquisition to be made.

The word "competent" has a number of meanings. One of the definitions is "legally qualified"; Webster, Third New International Dictionary; or stated another way "possessing the requisite . . . legal qualifications." Black's Law Dictionary (5th Ed.). If a corporation was not authorized to acquire an insurance company or was prohibited by law from so doing it would lack the requisite competence required by the statute. Indeed, even in the absence of such statutory requirement the commissioner could not approve an acquisition that was otherwise contrary to law. *State ex rel. LaVoie* v. *Building Commission*, 135 Conn. 415, 422, 65 A.2d 165 (1949).

---

[1] "[General Statutes] Sec. 38-39d. DISPOSITION RE ACQUISITION. HEARING. STANDARD OF REVIEW. . . . (b) The commissioner shall not approve any such offer, request, invitation, agreement or acquisition unless he finds that: (1) Upon completion of the acquisition, the domestic insurance company would be able to satisfy the requirements for the issuance of a license to write the line or lines of insurance for which it was licensed prior to such acquisition; (2) the financial condition of the acquiring person is not such as might jeopardize the financial stability of the insurance company, or prejudice the interests of its policyholders or the interests of any remaining securityholders who are unaffiliated with the acquiring person; (3) if a tender offer or exchange offer is contemplated, the terms thereof are fair and equitable to the securityholders of the insurance company; (4) the plans or proposals which the acquiring person has to liquidate the insurance company, to sell its assets or to merge or consolidate it with any person, or to make any other material change in its business or corporate structure or management, are fair and reasonable to policyholders and securityholders; and (5) the competence, experience and integrity of the acquiring person are such that it would be in the interest of the policyholders and securityholders of such insurance company and in the public interest for such offer, request, invitation, agreement or acquisition to be made. . . ."

## II

A corporation is a creature of the state. *Hopewell Baptist Church* v. *Craig,* 143 Conn. 593, 599, 124 A.2d 220 (1956). It derives its powers by legislative grant. *Bridgeport* v. *Housatonic R. Co.,* 15 Conn. 475, 501 (1843). Nothing is granted except what is given expressly or by fair implication. *Byrne* v. *Schuyler Electric Mfg. Co.,* 65 Conn. 336, 347, 31 A. 833 (1895). No other powers are implied except such as are necessary to carry the express powers into effect. *Community Credit Union, Inc.* v. *Connors,* 141 Conn. 301, 305, 105 A.2d 772 (1954); *Dwyer* v. *Leonard,* 100 Conn. 513, 517, 124 A. 28 (1924). "In all statutes granting powers to a corporation . . . things not enumerated in the grant, or excepted out of it, are held to be as distinctly negatived as though there were express words of negation." *Farrell* v. *Winchester Avenue R. Co.,* 61 Conn. 127, 130, 23 A. 757 (1891).

Corporations may be organized for general or special purposes. "Purpose" clauses whether contained in the legislative grant or in the certificate of incorporation refer to the general objects or aims sought to be attained; they state the general nature of the corporation's business. 1 Oleck, Modern Corporation Law § 6-3. "Power" clauses indicate the manner in which the purposes may be pursued. Ibid.; note, "Distinction Between Powers and Objects in Articles of Incorporation," 46 Harv. L. Rev. 1337 (1933). Corporations organized for special purposes are limited in their powers to the purposes for which they are organized. See *Briggs* v. *Bloomingdale Cemetery Assn.,* 113 Misc. 685, 185 N.Y.S. 348 (1920); 6 Fletcher, Corporations § 2481.

## III

Blue Cross is a nonprofit, hospital-medical service corporation without capital stock; under General Statutes §§ 33-165 and 33-178 it is exempt from state, district and municipal taxes. It is organized to operate a subscription plan to provide comprehensive health care for Connecticut citizens. The statutes that pertain to such a corporation are compiled in General Statutes, chapter 592, §§ 33-157 through 33-167 and chapter 593, §§ 33-168 through 33-179. The provisions of the Nonstock Corporation Act; General Statutes, chapter 600, §§ 33-419 through 33-526; govern the formation, purposes and powers of Blue Cross not covered in or limited by chapters 592 and 593.

Blue Cross intially consisted of two corporations. One corporation, Blue Cross of Connecticut, was organized as a hospital service corporation pursuant to General Statutes §§ 1136e through 1147e (Cum. Sup. 1939); the other, Connecticut Medical Service (CMS), was organized as a medical service corporation pursuant to §§ 1183e through 1194e (Cum. Sup. 1939). See Cross, Corporation Law in Connecticut §§ 11.2 and 11.3. The merger of the two corporations into the present corporation was authorized by Public Acts 1974, No. 74-7. Prior thereto, under § 33-162, subject to the approval of the insurance commissioner, a hospital service corporation was permitted to merge only with another hospital service corporation. No similar provision covered mergers of medical services corporations. See General Statutes § 33-175.

"It is essential, of course, that a corporation shall be formed for some purpose, and statutes authoriz-

ing the formation of corporations generally provide that corporations may be organized for certain specified purposes. A question naturally arises as to whether such a statute restricts the corporation organized thereunder to one purpose or permits them to be formed for more than one purpose. This depends upon the verbiage of the statute and the construction to be placed thereon. A statute stating the purposes for which corporations may be formed may be so worded that corporations formed thereunder are restricted to one purpose . . . ." 1 Fletcher, supra, § 99, p. 441; see *Burke* v. *Mead,* 159 Ind. 252, 64 N.E. 880 (1902); *In re Roofing & Sheet-Metal Contractors Assn. of Philadelphia,* 200 Pa. 111, 49 A. 894 (1901).

There is no question that in this appeal the statutes, and the charter[2] which reflects the statutes, under which Blue Cross was formed restrict its function to a limited purpose. General Statutes §§ 33-157(a)[3] and 33-168(a)[4] provide that a hospital-

[2] The Blue Cross charter reads in pertinent part as follows: "2. . . . (a) to provide hospital, medical and other health care benefits as provided in Chapters 592 and 593 of the General Statutes, including medical or dental expense indemnity, hospital service and health service benefits by or through a practitioner, hospital or other organization with which it may arrange for such care, or by itself, to its subscribers or to persons for whom it shall have contracted to provide for health care; to establish, maintain and operate health service and other non-profit health maintenance and health care plans and facilities; and to engage in any and all activities now or hereafter permitted by law to any hospital or medical service, medical or dental expense indemnity, or health service corporation; (b) to contract with individuals, partnerships, associations, corporations and any private or governmental entities, wherever located, to provide coverage for hospital, medical, dental and health services, to the extent permitted by law and subject to whatever approval by any State Agency or Department may be required by law . . . ."

[3] "[General Statutes] Sec. 33-157. DEFINITION. POWERS. EXEMPTION FROM INSURANCE LAWS. RESERVES. (a) A hospital service corporation is defined as a non-profit-sharing corporation without capital stock

medical service corporation shall be organized "for the purpose of establishing, maintaining and

organized under the laws of the state for the purpose of establishing, maintaining and operating a plan whereby comprehensive health care, which shall include inpatient and outpatient hospital care and home care, provided and billed by an approved general, special or chronic disease hospital, an approved clinic or an approved chronic and convalescent nursing home, and services incidental thereto, may be provided, at the expense of said corporation, to subscribers to such plan under a contract entitling such subscribers to the benefits provided therein. When so determined by any such corporation comprehensive health care shall also include appliances, drugs, medicines, supplies and all other health goods and services, including the services of physicians, doctors of dentistry and other licensed practitioners of the healing arts. Each such corporation shall be governed by this chapter and shall, except as specifically designated herein, be exempt from the provisions of the general statutes relating to insurance. Such hospitals, clinics and chronic and convalescent nursing homes as shall be contained in a list of approved institutions maintained by the department of health services shall be deemed approved for the purposes of this chapter. . . ."

4 "[General Statutes] Sec. 33-168. DEFINITION. POWERS. EXEMPTION FROM INSURANCE LAWS. RESERVES. (a) A nonprofit medical service corporation is defined as a non-profit-sharing corporation without capital stock organized under the laws of the state for the purpose of establishing, maintaining and operating a plan whereby comprehensive health care, which shall include inpatient and outpatient hospital care and home care, provided and billed by an approved general, special or chronic disease hospital, an approved clinic or an approved chronic and convalescent nursing home and services incidental thereto may be provided, at the expense of said corporation, to subscribers to such plan under a contract entitling such subscribers to the benefits provided therein. When so determined by any such corporation, comprehensive health care shall also include appliances, drugs, medicines, supplies and all other health goods and services, including the services of physicians, doctors of dentistry and other licensed practitioners of the healing arts. Any such corporation which provides coverage for the services of physicians shall also provide coverage for the services of chiropractors licensed under chapter 372 and natureopaths licensed under chapter 373. Each such corporation shall, except as specifically designated herein, be exempt from the provisions of the general statutes relating to insurance. Such hospitals, clinics and chronic and convalescent nursing homes as shall be contained in a list of approved institutions maintained by the department of health services shall be deemed approved for the purposes of this chapter. . . ."

operating a plan whereby comprehensive health care . . . may be provided . . . to subscribers." The list of services in the statutes that comprise comprehensive health care does not include life insurance coverage. The two chapters in the statutes enabling the creation of hospital-medical corporations are similar to the "more or less comprehensive statutes [that] have been enacted [in most states] governing a comparatively new type of nonprofit corporation, the hospital or medical service corporation. Generally under such statutes, hospital [-medical] service corporations are required to be formed without capital stock and to be operated not for a profit and *exclusively for the purpose of providing hospital [-medical] services,* and no dividend, benefit or pecuniary profit may be paid to any of the members or directors." (Emphasis added.) 1 Fletcher, supra, § 68, p. 329. Chapters 592 and 593 fit this general description.

The restrictive nature of limited purpose corporations such as those organized under chapters 592 and 593 can be discerned from the subsequent legislative history of these chapters. Whenever the legislature saw fit to broaden the authority of these corporations it did so by expanding, through the mechanism of redefinition, the area in which they exercised their authority. Section 33-157 (hospital service corporations) was amended by Public Acts 1965, No. 534 to include within the definition of "hospital care" inpatient, outpatient and home care provided by a hospital, clinic or nursing home; by Public Acts 1969, No. 686, § 1 to substitute "comprehensive health care" instead of "hospital" care and to include within the former appliances, drugs, medicines, supplies and other health goods and services such as those performed by physicians,

doctors of dentistry and other licensed practitioners of the healing arts; and by Public Acts 1974, No. 74-7, § 1 which authorized the merger of hospital service and medical service corporations. It is of more than passing interest to our present discussion that Public Acts 1974, No. 74-7 specifically limited the merged corporation to the powers and purposes of chapters 592 and 593.

A similar legislative history appears for medical service corporations. Section 33-168 (medical service corporations) was amended by Public Acts 1951, No. 330 to authorize payments for the services of doctors of dental surgery; by Public Acts 1953, No. 277 to cover osteopathic physicians; by Public Acts 1963, No. 333 to cover chiropractors; by Public Acts 1967, No. 775 to include with the meaning of "medical services" health services and supplies ordered by physicians, except presciption drugs; and by Public Acts 1969, No. 686, § 4 to cover a variety of inpatient, outpatient and home care services.

On December 20, 1978, the commissioner issued his decision on Blue Cross' petition. During the 1979 session of the general assembly, a bill (Committee Bill No. 447, Committee on Insurance and Real Estate) was introduced the stated purpose of which was "[t]o permit ownership of life insurance companies by hospital and medical service corporations." The bill sought to accomplish this purpose by an appropriate amendment of §§ 33-157 and 33-168. As Blue Cross concedes and as a review of the 1979 Public Acts discloses this bill failed of enactment. While inaction by the general assembly is not controlling; *State ex rel. Bennett* v. *Glynn*, 154 Conn. 237, 246, 224 A.2d 711 (1966); in view of the legislative history of these sections, the failure

of the legislature to act in this instance is significant. *Tileston* v. *Ullman,* 129 Conn. 84, 87–88, 26 A.2d 582 (1942).

## IV

Blue Cross argues that it derives its powers from the statutes relating to nonstock corporations, specifically § 33-428, and that under subsection (e) (1) of this statute it is specifically granted the power to "[a]cquire, by purchase or otherwise, hold, sell, convey and have and exercise any and all rights of ownership or interest in or to any real or personal property whatsoever, including, without limitation, shares, securities and any other interest in or obligation of other corporations or associations, individuals or governmental units . . . ." It contends that although it lacks the power to engage in the life insurance business it is not prevented from owning stock in a subsidiary corporation which is so authorized. Blue Cross' argument overlooks a number of basic tenets of statutory construction.

At common law a corporation may not become a stockholder in another corporation for the purpose of holding the stock permanently unless expressly authorized to do so. *Byrne* v. *Schuyler Electric Mfg. Co.,* 65 Conn. 336, 350, 31 A. 833 (1895). Nor may a corporation organized for a specific purpose become a stockholder in a corporation organized for another purpose. *Mutual Savings Bank & Building Assn.* v. *Meriden Agency Co.,* 24 Conn. 159, 164 (1855). It is a rule of statutory construction that statutes in derogation of the common law are to be strictly construed. *Edmundson* v. *Rivera,* 169 Conn. 630, 633, 363 A.2d 1031 (1975). Another rule of construction applicable to this case is that legislative grants of power to corporations, when susceptible

of more than one interpretation, are to be construed favorably to the state. *Spellacy* v. *American Life Ins. Assn.*, 144 Conn. 346, 352, 131 A.2d 834 (1957). Finally, when two statutes relate to the same subject matter every effort should be made to find a reasonable field for the operation of both statutes. *State* v. *Carbone*, 172 Conn. 242, 256, 374 A.2d 215 (1977). We start with the premise that Blue Cross is a limited purpose corporation. Unlike general purpose corporations whose powers, unless otherwise restricted, may roam over the wide expanse of the corporate prairie, limited purpose corporations are circumscribed by the corporate corral. Section 33-428(e), which authorizes nonstock corporations to acquire shares in other corporations, when read in the light of the restrictions imposed by § 33-423(c), the limitations imposed by chapters 592 and 593, and the rules of statutory construction referred to above, does not authorize Blue Cross to acquire a controlling interest in a life insurance company. Although it is true that §§ 33-161 and 33-174 authorize hospital and medical service corporations to "invest in other securities permitted . . . for the investment of trust funds," Blue Cross does not claim that its proposed acquisition and operation of Life constitutes an investment within the meaning of these statutes. We, therefore, need not consider whether such "investment" is appropriate.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal from the decision of the insurance commissioner.

In this opinion Peters, Healey and Wright, Js., concurred.

Bogdanski, C. J. (dissenting). Under General Statutes § 38-39d(b) (5) the commissioner shall not approve the present acquisition unless he finds that "the competence, experience and integrity of the acquiring person are such that it would be in the interest of the policyholders and securityholders of such insurance company . . . ." I cannot interpret "competence" to permit the commissioner to engage in an examination of whether the acquiring person has the statutory authority to own stock in a domestic insurance company.[1] The legislative history of §§ 38-39a through 38-39l supports the proposition that this statute was enacted for a more limited purpose, i.e., to prevent the acquiring person from depleting the cash reserves or establishing out-of-state management of Connecticut insurance companies, to the detriment of the people of this state.[2]

---

[1] *State ex rel. LaVoie* v. *Building Commission,* 135 Conn. 415, 422, 65 A.2d 165 (1949), is inapposite. In that case, the building commissioner was confronted with applications for permits to erect buildings upon lots, the use of which for such buildings would, with one exception, violate the zoning regulations. The zoning regulations stated that they shall be enforced by the building commissioner who could institute proceedings to prevent a violation of those regulations. In the present case the insurance commissioner is not given the power to prevent Blue Cross from acquiring stock in another company.

[2] Although not controlling on statutory interpretation, judicial notice may be taken of discussion in the general assembly. *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 58 n.10, 441 A.2d 68 (1981); *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 245, 377 A.2d 305 (1977). In discussing this proposed statute, Rep. McKinney stated: "[t]he conglomerate raids particularly on the insurance companies are a move on their part to grab the cash reserves of these companies. They greatly threaten the insurance industry, these conglomerates could care less about the State of Connecticut nor its main industry and I am delighted to see a bill of this type here which we hope will protect our insurance companies from raids of these totally, physically [sic fiscally?] irresponsible conglomerates — mergers." Rep. Kennelly stated, "I think it is most important from the standpoint of the long-term economy of this state and most particularly the Greater Hartford area that

American Professional Life Insurance Company (Life) is a dormant, Connecticut chartered insurance company having no present assets, liabilities, or policyholders.

The legislature has seen fit expressly to empower the attorney general to bring an action in the name of the state to restrain any person from purporting to have, or exercising, corporate powers not granted. General Statutes §§ 33-438, 33-492. We presume that the legislature acted in view of existing relevant statutes when it enacted § 38-39d, and with the intention to create one consistent body of law. *Lechner* v. *Holmberg,* 165 Conn. 152, 159, 328 A.2d 701 (1973). If the legislature had wished to give the commissioner the power to prevent the exercise of unlawful corporate powers, it would have said so. Moreover, the question of whether Blue Cross has the power to own shares of stock in Life raises issues of statutory interpretation, where the expertise of the administrative agency would be of little value. *Aaron* v. *Conservation Commission,* 178 Conn. 173, 178, 422 A.2d 290 (1979). Even if the commissioner may engage in such an inquiry, § 33-428(e) (1) expressly gives Blue Cross the power to own stock. Where the legislature deemed it necessary, it limited the powers of Blue Cross. The power to enter into contracts with subscibers, granted by § 33-428(e) (3) is restricted by §§ 33-166, 33-171 and 33-172. The power to invest in real estate mortgages, granted by § 33-428(e) (1), is

our fine insurance industry retain its local notion both in the context of ownership but in the more important context of direction and administration. I think this bill will go a long way toward preventing any untoward results that would result in the entire basis of the companies, the direction of the companies leaving the State of Connecticut." 13 H. R. Proc., Pt. 8, 1969 Sess., p. 3848.

denied by §§ 33-161 and 33-174.[3]  General Statutes § 33-428 (e) (1) provides, "[e]xcept to the extent otherwise provided in, and subject to the limitations contained in, its certificate of incorpration or in any law affecting it, a corporation shall have power to and may, in carrying out the purposes stated in its certificate of incorporation:  (1) Acquire, by purchase or otherwise, hold, sell, convey and have and exercise any and all rights of ownership or interest in or to any real or personal property whatsoever, including, without limitation, shares, securities and any other interest in or obligation of other corporations or associations, individuals or governmental units . . . ."  There is nothing in the certificate of incorporation or any statute which can overcome this clear grant of power.  Therefore, Blue Cross has the power to buy the shares of Life.

I would affirm.

---

[3] General Statutes § 33-423(c) does not prevent Blue Cross from acquiring stock in other companies.  It provides, "(c) Nothing in this chapter shall be construed to authorize a corporation formed hereunder to conduct any affairs except in compliance with any laws of this state regulating or otherwise applying to the same.  The provisions of this chapter govern all corporations, but notwithstanding the provisions of this chapter, where by law special provisions are made in the case of a designated class or classes of corporations governing the corporate procedure thereof in any respect, limiting or extending the powers thereof, conditioning action upon the approval of any agency of the state, or otherwise prescribing the conduct of such corporations, such procedure, powers, action and conduct shall be governed by such special provisions whether or not such corporations are formed under this chapter."

Special provisions, chapters 592 and 593, are made in the case of Blue Cross, but they do not prevent Blue Cross from owning stock to further its special purpose.