[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the Commissioner of Environmental Protection of the State of Connecticut. The action seeks an injunction against the defendant Butkin Precision Mfg. Co. prohibiting the defendant from violating Sec.22a-449(c)-1 et seq. of the Regulation of State Agencies relating to hazaradous [hazardous] waste management.
The action also seeks an order requiring the defendant to forefeit [forfeit] a sum not to exceed $25,000 per day, and that the defendant be liable for all costs fees and expenses incurred by the State of Connecticut in connection with each violation of laws subject to this action.
Immediately prior to the trial, the Court, Aronson, J., denied the motion of the defendant's attorney to withdraw their appearance. The matter was ordered to trial. The defendant did not participate in the trial. The matter proceeded to trial, the defendant producing no evidence at trial. CT Page 7545
The Court finds the following facts. A corporation known as Connecticut Plating Technologies engaged in the business of attempting to develop a process for Nickel Baron Plating Technology for several years. The company was not successful. It was disbanded in 1988 after approximately two years.
The Corporation, upon disbanding, sold its tanks to a third party. The corporation hired a firm called CECOS to pump out the tanks and dispose of the liquid residue in the tanks. CECOS disposed of the liquid residue in a fashion consistent with the proper disposal of such material.
There remained substancial [substantial] amounts of solid material which eventually had to be disposed of. CECOS quoted the corporation a sum of aproximately [approximately] sixteen thousand dollars to remove and dispose of the solid material. The corporation was defunct.
Mr. John Budka, president of Connecticut Plating Technologies, Inc. caused the solid material to be transported to a property owned by Butkin Precision Manufacturing Company in Milford, Conn. He stored the goods in an empty trailer on that property. The material was stored there under lock and key.
Mr. John Budka was president of Budkin Precision Manufacturing Company, and was the founder of that corporation. There was no relationship between Precision Manufacturing Company and Budkin Precision Manufacturing Company. Other than the fact that Mr. John Budka was an officer in each of the companies there was no community of interest or enterprise or finances amongst these two completely dissimilar corporations.
The shut down of Connecticut Plating Technologies took place in the Spring of 1988. In the fall of 1988 the Zoning Officer of the Town of Milford asked Budkin Precision Manufacturing Company to remove trailers from the Budkin property. Budkin had six trailers on the property and the zoning officer thought that was too many.
A Mr. Paul Saleski, an independent contractor, had been buying some scrap metal from Budkin Precision Manufacturing Company. He had come in off the street one day, so to speak, and asked if he could buy scrap, which he did from time to time.
Saleski approached Mr. George Budka, brother of John Budka, and said he, Saleski, would like to take the chemicals and said CT Page 7546 "he could sell some of the stuff." John Budka had been previously informed by a Mr. Galla, who assisted in the Connecticut Plating Technologies clean-up, that most of the "stuff" is good, hasn't been used, and could probably be sold. John Budka directed George Budka that if Saleski "could sell it, give it to him."
When CECOS had quoted Connecticut Platiny Technologies a price to remove all of the chemicals, liquid and solid, the quote had been thirty thousand dollars. Of that quote, the amount of sixteen thousand dollars would have been the amount required to remove the solids. Mr. Galla of CECOS told John Budka that "John this stuff has to go (offsite). This stuff is unused. You can probably get people to buy some of it." Mr. Galla told him that "the stuff in the tanks has to go." John Budka paid for the removal of the liquids. Mr. Galla took an inventory of the solids, which was preserved and later made available to the plaintiff.
When the solids were removed from the Connecticut Plating Technologies site there was no evidence of corrosion or leaking in any of the containers. Had there been any such evidence John Budka would not nave taken them off the site.
The material remained at the premises of the defendant, in a locked trailer truck for some time. Paul Saleski came to the site and removed the material. He delivered it, or part of it, to a scrap metal yard in Wallingford, known as Goldie's Scrap Yard, owned by a Mr. Arthur Rogers.
Mr. Rogers was not present when the material was delivered. As soon as he became aware of the presence of the material he determined where they had come from. He immediately called the defendant's premises and apparently spoke to George Budka. He demanded that they be removed immediately — now! Within 2 hours a pickup truck came with two men and the goods were removed.
Paul Saleski had previously worked for Mr. Rogers for about two weeks and had been discharged as being totally unreliable and irresponsible.
The material eventually ended up in the garage of a private home at 22 Simpson Avenue, Wallingford, Connecticut. Two men who were on the payroll of the defendant Budkin Precision CT Page 7547 Manufacturing Company assisted in delivering the material. The two were long term employees named Burton Bond, since retired, and another employee called named Joseph Jerkovic. Mr. Bond recalls delivering the material to 22 Simpson Avenue, as George Budka asked he and Joseph to do it.
The evidence is unclear as to whether this was a direct delivery, or the delivery from the Scrap Yard. The distinction between the two is unimportant. They were persons who helped to accomplish the delivery to 22 Simpson Avenue.
22 Simpson Avenue, Wallingford, was owned by the Estate of Alice Saleski, deceased, her children and Susan Saleski Wodatch of Washington, D.C. and the said Paul Saleski. The property was for sale, listed with a real estate agent. The property had recently been vacated by an unrelated prior tenant.
Upon complaints being made to the plaintiff, an investigation was immediately conducted on site. The material in the garage was placed in a disorderly fashion. The containers were deteriorating. Many of the materials were hazardous substances, including Potassiam [Potassium] Cyanide, Hydrochloric Acid, Electroless Nickel, Sodium Hypochlorite, Nickel Sulphate and the like. Contact between some of the chemicals could have dire consequences, as well as some of the chemicals being hazardous in and of themselves.
Immediate steps were taken by the plaintiff. The cost of removal was approximately $90,000. All charges therefore have been paid by the Estate of Alice Saleski. The Estate is not a party to this litigation. The plaintiff has not sued Paul Saleski, George Budka, John Budka or the owner of the material Connecticut Plating Technology.
The complaint alleges, in para. 3, that the defendant, to wit Budkin Precision Mfg. Co., stored the hazardous materials on its site in Milford. The defendant admitted that allegation. The complaint further alleges that the defendant was a transporter, generator, shipper and the like, and cites numerous violations of statutes and regulations pertaining to that alleged activity. The defendant denies each of those allegations. The plaintiff seeks a temporary and permanent injunction, and that the defendant pay a fine not to exceed $25,000 per day for the alleged violations. CT Page 7548
The plaintiff claims that it is immaterial that Mr. John Budka and Mr. George Budka no longer have any business or ownership interest in Budkin Precision Mfg. Co. With this contention the court agrees. The plaintiff claims that the corporation's "current dismal financial condition" is immaterial to the imposition of civil penalties. That contention is not supportable. See Carothers v. Capozziello, 215 Conn. 82, 104.
The plaintiff takes the position that Budkin Precision Mfg. Co. is legally responsible for each of the various violations of Chapter 445 and 445a of the Connecticut General Statutes in the handling and disposition of the hazardous waste substances of Connecticut Plating Technologies, Inc.
John Budka was the then president and director of the defendant Budkin Precision Mfg. Co. He was also the president of Connecticut Plating Technologies, Inc. George Budka was a Vice President, and noted stockholder of Budkin Precision Mfg. Co. George Budka had no relationship whatsoever with Connecticut Plating Technologies, Inc. as an officer, director, stockholder, employee, or in any other fashion. Other than this instance, the subordinate employees of Budkin did no work for Connecticut Plating.
There was no community of interest, either business or personal, between these corporations. Connecticut Plating was solely a personal endeavor by John Budka, and others not in any fashion related to the defendant Budkin Precision Mfg. Co., for the purpose of developing a plating process. These corporations were as separate and apart as one could ever envision two corporations to be. One had nothing whatsoever to do with the other.
The existence of these two corporations as separate and distinct individuals is a classic illustration of the rule of law: "In the eyes of the law, a corporation is a person. . ." Burns v. Gould, 172 Conn. 210, 216.
There is no evidence to indicate that this corporation Budkin Precision Mfg. Co. had any right or purpose or power to act as a transporter of hazardous material. "A corporation is a creature of the state. . . . Nothing is granted except what is given expressly or by fair implication." Blue Cross Blue Shield of Connecticut, Inc. v. Mike, 184 Conn. 352, 355. CT Page 7549
The evidence is totally clear that none of the material in question was generated by this defendant Budkin Precision Mfg. Co.
The generating of this material was completely accomplished by Connecticut Plating Technologies, Inc. The transporting of the material to the Budkin site, and the transporting from the Budkin site was soley [solely] at and by the direction of Connecticut Plating Technologies, Inc. by the direction of John Budka, its president.
These activities served no purpose whatsoever of this defendant Budkin Precision Mfg. Co. The fact that John Budka, totally outside of his authority as president of Budkin Precision Mfg. Co. in the exercise of ostensible power not given to him by the corporation, and solely as president of Connecticut Plating Technologies, for his personal purposes, directed employees of the defendant corporation to assist in this transporting enterprise does not cause that activity to be the activity of the defendant corporation.
"To make the corporation responsible for his acts, they must be done in prosecution of its business and in persuance [pursuance] of his employment. The corporation is only liable for the acts of its president if it is shown that his acts are so related to his duties as president that they may reasonably be held to have been done in the prosecution of the business of the corporation which he was acting within the scope of his employment." Baptist v. Shanen,145 Conn. 605, 608.
The fact that George Budka was an employee of the defendant when he asked John Budka if he, George, should make arrangements to have Saleski remove the material does not make the transporting the act of the defendant. To the contrary, if this were to be the act of the defendant, for whom George Budka was general manager, he would not have needed or asked for the direction of John Budka. Further the assigning of subordinate laboring employees Burton Bond and "Joseph", to help with or transport the material for John Budka and his Connecticut Plating Technologies, Inc. does not make their acts the acts of the defendant.
These lower eschelon subordinate employees of the defendant are not the object of specific condemnation by this court. They did what they were told without knowledge that to CT Page 7550 participate in this activity was illegal or improper, or without knowledge of the potentially dangerous nature of the materials. The fault in this matter lies with John Budka and Connecticut Plating Technologies, Inc. These lower eschelon people are not parties to this suit. Their personal responsibility, if any, is not the subject of this action.
The law has long recognized the concept of the "borrowed servant" rule. See Parsons v. Daly Sons, 114 Conn. 144. That concept, in this case, goes one step further, and can be best described as a stolen servant circumstance. John Budka had no more right to take these men from the defendant corporation for these purposes than he would have to take them from the corporation to paint his own personal house — or to use any of the assets of the corporation for his own personal use or for the use of a wholly unrelated corporation or person. The transporting of these materials was not in any sense the act of the defendant Budkin Precision Mfg. Co. The raw power to give orders to other people is far different than the right to give lawful orders. John Budka had the former, and utterly lacked the latter.
The storage of these materials, even for a relatively brief period of time, is another matter. The defendant had a limited right to store hazardous wastes on its property by virtue of being a generator of another type of waste totally dissimilar from the subject materials. Also, from time to time trailers belonging to others would be located on the property for temporary use for storage, which provided some benefit to the defendant corporation. The court concludes that the licence [license] to outsiders to keep trailers on the defendant's property was a marginal part of the business activity of the defendant corporation. Hence the storage of the materials on the property caused the defendant to be a gratuitous bailee for the storage of the materials for the several months here involved, and was within the permissible business scope of the defendant corporation.
The defendant was a storer of the material. "`Storage' means the holding of hazardous waste for a temporary period in such a manner as not to constitute disposal of such hazardous waste, at the end of which period the hazardous waste is treated, stored on disposed of elsewhere." State of Connecticut Hazardous Waste Management Regulation. Sec. 22a-449(c)-1(c) Definitions. CT Page 7551
Regulation Section 22a-449(c) — 33(c)(3) provides regulations for storage: "A container shall be stored on an impervious surface which is bermed to prevent leakage in case of a spill." The storage of the materials in the trailer of a trailer truck completely fails to meet this requirement.
Regulation sub-section (d) of that number regulation provides "at least weekly, the owner or operator must inspect areas where containers are stored, looking for leaks and for deterioration caused by corrosion or other factors." The evidence demonstrates that such weekly inspections were not made.
Regulation sub-section (f) of that numbered regulation provides for separation or incompatible wastes by "dike, berm, wall or other device." That regulation was not complied with.
The plaintiff has alleged and proved these violations of the Regulations by the defendant.
Section 22a-131 Connecticut General Statutes provides for the Attorney General to institute this civil action to recover a fine against any person who violates any provision of the state's hazardous waste program. This statute calls for a fine of not more than twenty five thousand dollars for each day of such violation.
In imposing a fine the court shall consider: "(1) the size of the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith effects made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) fair and equitable treatment of the regulated community." Carothers v. Capozziello, 215 Conn. 82,104.
The court determines as follows. (1) the size of the business involved appears to be small, by inference from the evidence produced. The plaintiff produced no definitive evidence to the contrary. (2) The business, now owned by others, appears to be in serious financial difficulty. Note plaintiff's trial memorandum "its current dismal financial condition." (3) There is no evidence that any leakage or CT Page 7552 material deterioration took place so as to cause a hazard during the relatively brief time of storage. (4) The defendant corporation was captive of the self interest of John Budka and was unable to exercise independent judgment in matters totally outside its own control. (5) The defendant gained no economic benefit by any violation. (6) There appears to be no possibility that the corporation will engage in any such future violations. (7) The defendant should not equitably be required to bear a severe burden of extreme penalty for offenses of one of its officers which was completely outside of the scope of its business interest, bearing in mind the personal statutory responsibility of the officer for his own self serving activity.
The court determines that the activity of the defendant, though not of its own business will and volition, allowed Connecticut Plating Technologies, Inc. and John Budka to save sixteen thousand dollars by giving to those persons the ability to avoid having to pay that sum for proper disposal of these materials, as quoted by CECOS. Had the defendant's property not been available, Connecticut Plating Technologies and John Butka would have had no choice but to dispose of the materials through proper and safe disposal methods. The court cannot engage in speculation as to whether the temporary storage had any effect upon the deterioration of the materials, and does not conclude that any such deterioration took place during, or was caused by, the temporary storage.
The burden of the clean-up was borne by the estate of Paul Saleski's mother. He was the direct cause of the necessity for the emergency clean-up.
The activity of the defendant Budkin Precision Mfg. Co. in allowing the temporary storage constituted the violations set forth herein. Although not a direct cause of the ultimate harm, it was a factor which allowed the ultimate harm to occur.
Consequently, the court finds for the plaintiff and imposes a civil penalty of sixteen thousand dollars against the defendant Budkin Precision Mfg. Co. as provided by Connecticut General Statutes 22a-131.
L. Paul Sullivan, J. CT Page 7553