[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit first came to this Court by a Complaint dated February 25, 1997, and returnable March 18, 1997, in which complaint the Plaintiff claimed that he and the Defendant were the parents of a minor child, and the Plaintiff claimed custody of the minor child and support for the minor child.
The Defendant appeared by counsel on March 5, 1997, and on said date counsel for the Defendant filed an Answer to the Complaint and a Cross Complaint.
In the Cross Complaint the Defendant claimed custody of the minor child, support, medical insurance, unreimbursed medical expenses, life insurance, and attorney's fees.
Certain orders were entered by the court; on April 7, 1997 Booth J., on April 21, 1997 Hurley J., and May 27, 1997 Booth J.
The Plaintiff and the Defendant each successfully completed the Parenting Education Program.
New counsel appeared for the Plaintiff on September 11, 1997. CT Page 12278
The Court takes judicial notice of file number FA97-0111989S, Jennifer Myers vs. Randy Perry, and the acknowledgement of paternity contained therein by Randy J. Perry, dated January 7, 1997, concerning the child, Joshua Perry, born January 22, 1996 in New London.
Trial to the Court commenced on October 21, 1997 and concluded on October 24, 1997.
Both the Plaintiff and the Defendant and their respective attorneys were present on both dates.
At the outset of the proceedings the Plaintiff and the Defendant, through their counsel, stipulated to certain issues.
Those stipulations were as follows:
Joint legal custody of the minor child Joshua Perry.
The Defendant mother, Jennifer Myers, to be the primary custodial caretaker and all final decision-making authority resting with her.
The Plaintiff to have the following agreed visitation, with other visitation issues left to the Court:
Christmas Day, Easter Sunday, and Thanksgiving Day split equally.
The Plaintiff must feed the child at appropriate times and appropriate meals when he has the child.
Each of the parties can request a blood test for drug analysis to be done at the Diagnostic Medical Labs in East Lyme, CT, at any time they deem appropriate. Refusal to take said test shall terminate visitation until a hearing can be scheduled. The party requesting the test is obligated to pay for it. If either party is analyzed with an illegal substance in their system, then an immediate hearing will be held, with visitation suspended until that hearing, if it is the Plaintiff who has tested positive.
Each of the parties will supply the other party with a requisition/authorization for the "lab" listed above to do the blood test, duly executed by their personal physician, with a CT Page 12279 further authorization that said physician can release the results of the test to the attorneys.
The child's bank account will continue to be held in a U.G.T.M. account with the parties as joint trustees, evidence of which will be sent by the Plaintiff to the Defendant within 10 days.
The Defendant will carry medical insurance on behalf of the minor child as available through employment, and the parties will divide 50/50 any unreimbursed health-related expenses for the child, including but not limited to, orthodontic, opthamological, chiropractic, psychological care, etc., and the Plaintiff will pay his one-half within one week of receipt of the bill by the Defendant. Any co-pay to be equally apportioned. The Plaintiff to carry $50,000.00 of life insurance on himself, naming the child beneficiary and the Defendant as trustee, until his support obligation terminates, forwarding evidence of this policy on January 1st of each year.
The Court makes the following findings of fact.
Randy J. Perry is employed as a shop foreman at Perry-Lathrop Auto Body, Inc., located in Waterford. According to his financial affidavit his gross weekly wage is $790.00 and his net $564.00.
Perry's current order of support is $124.00, plus $5.00 on an arrearage.
The Plaintiff acknowledged use of drugs, including marijuana, in the past and up until the child was born, but has not used any drugs for the last two months.
The Plaintiff and the Defendant resided together in the Plaintiff's home at 12 Miss Vans Court, Waterford when the child was born and until November of 1996. Plaintiff, while the parties resided together after the birth of the child, paid all the expenses except food. The child was 10 months old when the Defendant left the home in which the parties had jointly resided.
The sum of $1,780.00 is acknowledged by the Plaintiff as an arrearage for support. There is some indication that the Plaintiff allows the child to have too much candy.
The Plaintiff's 1996 income, as reflected on his Federal CT Page 12280 Income Tax return, was $42,033.00. See Defendant's Exhibit A.
On one occasion while the Plaintiff had the child for visitation and had taken the child to his place of employment, the child sustained an injury to his chin requiring six or seven stitches.
Plaintiff and Defendant had resided together prior to the child's birth for five or six years.
There was at least one instance of physical violence sustained by the Defendant at the hands of the Plaintiff shortly before she moved out in November 1996.
Defendant admitted using marijuana years ago, but claims she no longer does so.
On one occasion marijuana was found in the child's diaper bag on returning from visitation with the Plaintiff.
Defendant is employed by the Mohegan Sun Casino as a beverage server and has been since October 1996.
Defendant claims her earnings at the casino are the result of a base compensation of $3.15 an hour plus tips.
Defendant recently received $6,000.00 from an accident settlement. She used this as a down payment to purchase a 1993 Jeep Cherokee motor vehicle.
Defendant also owns a Mazda motor vehicle, which she has for sale at $3,000.00.
The minor child Joshua has returned from visitation with the Plaintiff on some occasions with soiled diapers.
Defendant has points charged against her by her employer if she is tardy or doesn't appear at her employment. Accumulation of five points means loss of position.
Defendant now has two and one-half points credited against her.
Problems of timely pick-up or return concerning the minor child have been ongoing and have created problems between CT Page 12281
Plaintiff and Defendant and apparently contributed to Defendant's accumulated points.
There is a sharp conflict in the testimony of witnesses as to the earnings of the Defendant at Mohegan Sun Casino.
The witness, Laurie Agar, a bartender and co-worker at the Casino, testified that the Defendant made as much as $35.00 to $50.00 an hour. Other co-workers of the Defendant, namely Roberta Cassel and Janet Dyer, put Defendant's earnings at $250.00 to $350.00 weekly, and $275.00 to $325.00 weekly, respectively. Dennis Nahas, the Beverage Shift manager, testified to $300.00 per week for the Defendant.
The Defendant did not offer any income tax return as an exhibit.
From Plaintiff's Exhibit 1, having to do with the Defendant's purchase of the Jeep Cherokee and her loan application to the bank, Charter Oak Federal Credit Union, which was admitted through a representative of the Credit Union, the Court notes a page entitled "Profile Form" for Jennifer Myers.
This exhibit shows that according to the bank's inquiry, or the representations of the borrower, that the Defendant's monthly income from Mohegan Sun was $2,150.00, and $25,800.00 annually.
This would suggest a weekly gross from the Casino of $512.00, plus or minus, instead of the $300.00 that the Defendant claims.
Neither guideline worksheet submitted by the Defendant appears to properly reflect the end result percentages and suggested support order.
The Plaintiff's financial affidavit as concerns weekly gross and deductions for FITW, SSE, medicare and SITW appears accurate when compared to Federal and State tax guides and the .0765 factor for SSE.
The Court is unable to reconcile the Defendant's financial affidavit with the State and Federal Guidelines.
The deductions claimed on the Defendant's financial affidavit appear to comport more with the earnings claimed on Plaintiff's CT Page 12282 1, the Profile Form, than the $300.00 shown as the gross on her affidavit. The Defendant offered no W-2 statements.
Basically the Court has been asked to approve the agreed issues and resolve the following issues.
1. Support for the minor child.
2. Visitation issues beyond that agreed on.
3. Attorney's fees.
4. Change the child's name from Joshua R. Perry to Joshua R. Perry-Myers.
5. Resolve the issue of arrearage.
As to the issue of support, the Court notes the following from the respective financial affidavits or the exhibits.
As to the Plaintiff —
Gross weekly $790.00
Deductions 135.56 FITW 48.98 SSE 11.46 Medicare 30.00 SITW ----- Total deductions $226.00 Net $564.00
See Defendant's Exhibit A.
As to the Defendant — 2 exemptions Gross weekly per affidavit $300.00
Deductions 45.00 Fed w/h 16.00 Social Security 19.00 State tax ------ Total deductions $80.00 Net $220.00 CT Page 12283
Using Defendant's Profile Form — 2 exemptions A 4.32 week-month breakdown Gross $496.00
Deductions 130.00 Daycare 59.00 Federal w/h 10.72 State w/h 37.92 Social Security-Med. ------ Total deductions $237.64 Net $258.36 Joint net totals $822.36
Guideline support — 1 child — $199.00
Percentages: Plaintiff 69% Defendant 31%
Support $137.00
It may be that the Defendant has factored in for purposes of her computation the Plaintiff's standard deduction and/or items such as itemizing deductions for real estate taxes, mortgage interest, etc., but no explanation was offered to the Court during the proceedings as to how the figures were arrived at, nor were the guideline worksheets properly completed leaving the Court to conjecture and surmise.
As to visitation beyond that agreed by both parties, the parties have indicated a willingness to have Family Relations inquire into the matter and make a recommendation.
The Court directs that a Family Relations study be done and report made.
In the interim, the existing visitation schedule as adopted on April 21, 1997 shall continue.
As to the issue of attorney's fees, the Court notes the Affidavit of Debt, dated October 21, 1997, submitted by the Defendant's attorney at trial requesting $4,250.00.
Defendant's counsel represents that Koizim vs. Koizim,181 Conn. 492 (July 1980) is the controlling authority in this CT Page 12284 regard.
From Koizim the Court notes:
 "Counsel fees are not to be awarded merely because the obligor has demonstrated an ability to pay. `Courts ordinarily award counsel fees in divorce cases so that a party (usually the wife) may not be deprived of her rights because of lack of funds. Krasnow v. Krasnow, 140 Conn. 254, 265, 99 A.2d 104 (1953); Steinmann v. Steinmann, 121 Conn. 498, 504, 186 A. 501 (1936).' Ridolfi v. Ridolfi, 178 Conn. 377, 380, 423 A.2d 85
(1979). In making its determination regarding attorney's fees the Court is directed by General Statutes § 46b-62 to consider the respective financial ability of the parties. Murphy v. Murphy, 180 Conn. 376, 380, 429 A.2d 897 (1980)."
The Court may also consider the time and labor required the requisite skill involved, experience reputation and ability of counsel, awards in similar matters. The Court is also mindful of the provisions of Connecticut General Statutes § 46b-82
involving the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each.
The Court is mindful of the disparate financial situations of the parties and the equity the Plaintiff has in his real estate, motor vehicles and personal property.
The Court is mindful that this is not a dissolution ofmarriage, but solely issues as to a minor child of unmarried parties and support incident thereto. The Court under all the circumstances awards attorney's fees to the Defendant in the amount of $2,500.00 to be paid within 90 days.
As to the claimed arrearage, by agreement the amount $1,748.00 shall be paid to the Defendant within 30 days.
As to the request of the Court by the Defendant to change the child's name from Joshua Perry to Joshua Perry-Myers the Court comments as follows. CT Page 12285
The case of Sharron vs. Garofalo, No. FA91-036846, November 1, 1991 Flynn J. is instructive and from that case the Court notes:
 "Defendant's request to change the child's last name to his is not acted upon, the court having determined it is without jurisdiction to entertain this request in this proceeding. Such a request must be brought in a separate proceeding to which the child is a party by a person authorized to do so. See Mayor v. Mayor, 17 Conn. App. 627, 632; Section 52-11 Conn. Gen. Stat.; P.B. Section 105.
 Although in a paternity proceeding the child is the subject of the dispute, he is not a party to it unless he has been joined as a party plaintiff or defendant. While it is true, as the defendant asserts, that provision of Section 45a-606 of the General Statutes give the father powers of a joint guardian of the child once paternity is acknowledged and adjudicated, if he seeks to change the surname of the child to his, that can only occur in a proceeding brought in the child's name to which the child is a party."
The Court also considered the effect of Mayor vs. Mayor,17 Conn. App. 627 (1989) Bassick J., and from that case the Court notes:
 "We note initially that no statute is addressed specifically to the jurisdiction of the Superior Court to change the name of a minor child. General Statutes § 52-11, however, confers jurisdiction upon the Superior Court to effect changes of name generally. Section 52-11 provides that `[t]he superior court . . . shall have jurisdiction of complaints praying for a change of name, brought by any person residing in the judicial district, and may CT Page 12286 change the name of the complainant . . .' (Emphasis added.) The jurisdiction of the Superior Court in family relations matters is expressly defined in § 46b-1 (6) as extending to `complaints for change of name.' (Emphasis added.) These statutes are consistent in expressly limiting the court's jurisdiction to change a name to the situation in which the interested individual petitions the court for the change by filing a complaint. When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. Capalbo v. Planning Zoning Board of Appeals, 208 Conn. 480, 486, 547 A.2d 528 (1988); Nicotra Wieler Investment Management. Inc. v. Grower, 207 Conn. 441, 451, 541 A.2d 1226
(1988) State v. Champagne, 206 Conn. 421, 428, 538 A.2d 193 (1988); Rhodes v. Hartford, 201 Conn. 89, 93, 513 A.2d 124
(1986); Lundgren v. Stratford, 12 Conn. App. 138, 142, 530 A.2d 183, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987). We will not assume that the statutory language granting the court jurisdiction of `complaints praying for a change of name' is meaningless or superfluous. (Emphasis added.) See Gill v. Petrazzuoli Bros., Inc., 10 Conn. App. 22, 31, 521 A.2d 212 (1987). It is apparent from the clear words of §§ 52-11 and 46b-1 (6) that the legislature contemplated that a court should effect a change of name only in the context of an action brought for that purpose by the person desiring the change of name. We note that procedures for the initiation and prosecution of such an action on behalf of a minor child are set forth in Practice Book § 105. On the basis of the express terms of §§ 52-11 and 46b-1 (6), we conclude-that the trial court was without jurisdiction to change the name of a nonparty minor child incident to the dissolution of the parents' marriage. CT Page 12287
 Our conclusion is supported by the fact that, when the legislature has seen fit to confer jurisdiction upon a court to change a name incident to its exercise of jurisdiction in the context of a proceeding other than one brought pursuant to § 52-11 or § 45-3b, it has expressly done so. General Statutes §§ 46b-1 (4) and 46b-63 give the court the power to change the name of either spouse incident to the dissolution of a marriage. General Statutes § 45-66a gives the Probate Court jurisdiction to change the name of an adopted person as part of its approval of an agreement of adoption or declaration of intention to adopt. In examining the various statutes concerning changes of name, we must consider the statutory scheme as a whole. Berger v. Tonken, 192 Conn. 581, 589, 473 A.2d 782
(1984). Where more than one statute is involved, we presume that the legislature intended them to be read together to create a harmonious body of law. Berger v. Tonken,
supra; Blue Cross Blue Shield of Connecticut, Inc. v. Mike, 184 Conn. 352, 362, 439 A.2d 1026 (1981); Heffernan v. Slapin, 182 Conn. 40, 46, 438 A.2d 1 (1980); Frazier v. Manson, 176 Conn. 638, 642, 410 A.2d 475 (1979). Having examined all the statutes bearing on changes of name, we conclude that the legislature did not choose to grant the court jurisdiction to effect changes in the names of nonparty minor children incident to dissolutions of parents' marriages. A parent who wishes to effect a change of name for a minor child in the Superior Court must invoke the court's jurisdiction by proceeding under § 52-11 and must comply with the procedures established by Practice Book § 105."
The Court respectfully declines to consider or act upon the request by the Defendant mother for a change in the child's name on the basis of the foregoing. CT Page 12288
The Court approves the agreed issues.
The Court enters an order of support based on the most reliable information available to it in the amount of $137.00.
Austin, J.